SHEVIN, Judge.
R. Clayton Umbel appeals a final summary judgment on his claims for breach of contract, breach of partnership agreement, and intentional interference with the contract and agreement. We affirm.
Umbel raises several issues. However, only one merits discussion: Whether the court erred in finding that the partnership agreement was created for an illegal purpose and was unenforceable. Umbel and Tor S. Boswiek orally agreed to be partners to evaluate companies as possible investments or to find investors for the companies. Umbel learned that Frank Tomasino was interested in obtaining investors for his company, Foodtrader.com, Inc. Umbel introduced Boswiek and To-masino. The three men discussed the company’s business plan, potential sources of investment capital, corporate structures to facilitate investments, what percentage of the company would be sold for the $3,000,000 initial investment that Umbel or Boswiek would raise, and the ten percent commission or fee that the men would receive as a result of any such investment. After an initial investigation, however, Umbel and Boswiek took no further action on Foodtrader’s behalf.
Thereafter, Boswiek began full-time employment with an investment company; Umbel was aware Boswiek had taken this position. Some time later, Foodtrader was negotiating with Boswick’s employer; Bo-swiek participated in the contacts between the two companies. Subsequently, Toma-sino offered Boswiek a position with Food-trader, which Boswiek accepted.
Umbel filed a complaint against Bo-swiek, Tomasino, and Foodtrader asserting several counts: Count I, breach of contract against Foodtrader; Count II, breach of the partnership agreement against Bo-swiek; Count III, intentional interference *374 with the partnership agreement against Tomasino and Foodtrader; and Count IV, intentional interference with a contract against Boswick.[1],[2] Under counts II and III, Umbel sought to recover from Bo-swick a share of the profits and benefits Boswick derived from his employment with Foodtrader as Umbel’s share under the partnership agreement. The trial court found that the agreement was for an illegal purpose, and granted summary judgment on these counts' ruling that the agreement was unenforceable. We agree with this ruling. '
Despite window dressing to the contrary, the partnership agreement, as alleged in the complaint, was created for the purpose of obtaining investors for companies, in exchange for a fee or commission. More specifically, the complaint alleges that a percentage of Foodtrader would be sold for $3,000,000 in investments raised by the partnership, and that the partnership would receive a ten percent commission or fee from any such investment. Such an endeavor, when carried out by persons who are not registered securities dealers under the Florida Securities and Investor Protection Act, §§ 517.011, et seq., FI. Stat. (1999), is in contravention of the Act. § 517.12(1), Fla. Stat. (1999). “[I]t must be held that as a matter of law any contract made in violation of [the Act’s] terms, provisions or requirements is void and confers no enforceable rights on the contracting parties.” Edwards v. Trulis, 212 So.2d 893, 895 (Fla. 1st DCA 1968), cited in Buehler v. LTI Int’l, Inc., 762 So.2d 530 (Fla. 2d DCA 2000)(affirming summary judgment on finder’s fee claim brought by person not registered as securities dealer).
Umbel argues that there are various exemptions in the Act that would have rendered performance of the partnership agreement legal, and, hence, enforceable. However, the record does not support a finding that these exemptions would redeem the partnership agreement from the illegality realm. We consider each exemption in turn.
Umbel argues that section 517.061(11) renders the partnership agreement legal and enforceable. This section exempts from registration offers for sale by or on behalf of an issuer of its own securities under certain enumerated conditions. This exemption does not help Umbel because the exemption only applies where there is no commission or compensation for the sale, or the seller is a registered dealer. § 517.061(ll)(a)4, Fla. Stat. (1999).
Umbel also asserts that under subsection 517.021(6)(b)6, the partnership could have performed the work that Boswick is doing for Foodtrader, and received the compensation .that Boswick is earning. Hence, Umbel argues, the complaint doesn’t seek to illegally split a commission, but rather seeks an accounting and division of partnership profits. This also fails to legalize the partnership agreement because this is not how the events transpired. The partnership approached Fo-odtrader when neither partner was an employee. The partnership did not perform for Foodtrader. Foodtrader thereafter hired Boswick as an employee at a time when Boswick was employed elsewhere. *375 The events as alleged in the complaint do not fall under, this exemption.
Next, Umbel asserts the partnership could legally act as an investment advisor under subsection 517.021(12)(a). This exemption is also inapplicable as the complaint clearly alleges that the purpose of the partnership was to raise $3,000,000 in investments for Foodtrader, in exchange for which Umbel and Boswiek would receive a ten percent commission or fee. This belies any argument that the partnership was merely advising Foodtrader rather than soliciting sales or offers. See § 517.021(12)(a), Fla. Stat. (1999).
The last exemption under which Umbel claims the partnership purpose could have been legally carried out is the promoter exemption in subsections 517.021(13), and (17). This exemption permits a promoter to found and organize a business enterprise and issue securities in connection therewith. This exemption cannot save the partnership agreement because subsection 517.021(17)(b) specifically excludes from the definition of promoter any person who does not take part in founding and organizing the enterprise, or a person who receives securities solely as a commission. The partnership did not establish Food-trader, and the compensation the partnership would have received from Foodtrader would have been a commission.
It is true that the law presumes that contracts are created for legal purposes. Neiman v. Galloway, 704 So.2d 1131 (Fla. 4th DCA 1998); Edwards v. Miami Transit, 150 Fla. 315, 7 So.2d 440 (1942). However, where, as here, the very facts recited in the complaint belie a conclusion that there was a legal purpose behind the partnership agreement, summary judgment cannot be avoided on this basis. Compare Neiman, (no evidence that contract violated public policy); Edwards, (demurrer inappropriate if any facts demonstrate a claim can be brought).
It is of no moment that Umbel or Bo-swick could have obtained registration before consummating the contemplated transactions. The complaint is based on events that occurred at a time when neither Umbel nor, Boswiek were registered. Hence, despite protestations to the contrary, Umbel and Boswiek had .undertaken a course of conduct to secure investment capital for Foodtrader, when neither was a registered dealer. Securing registration thereafter could not cure actions that had already taken place. See Geneva Investment, Ltd. v. Trafalgar Dev., Ltd., 274 So.2d 581 (Fla. 3d DCA 1973)(must possess license at time service is rendered).
Based on the foregoing, we affirm the final summary judgment in all respects.
Affirmed.

. Umbel voluntarily dismissed count V of the complaint.

. The trial court granted defense summary judgment motions on counts I and IV, finding that as a matter of law there was no breach of contract, and consequently there could be no interference therewith. We affirm this ruling as the contract was unambiguous and the plain meaning of the parties' language controls. Pol v. Pol, 705 So.2d 51 (Fla. 3d DCA 1997).