CINTAS CORPORATION, Cintas Corporation No. 2, Cintas Corporation No. 3, and Cintas Holdings LLC, Plaintiffs,

v.

UNITE HERE, Change to Win, International Brotherhood of Teamsters, Bruce Raynor, Ahmer Qadeer, Elizabeth Gres, Peter Demay, Katie Unger, Keith Mestrich, Stefan Antonowicz, and Does 1 through 100, Defendants.

No. 08 Civ. 2185 (WHP).

United States District Court,
S.D. New York.

March 9, 2009.

Drew M. Hicks, Esq., Patricia Hogan, Esq., Christy M. Nageleisen–Blades, Esq., Jamie M. Ramsey, Esq., Gregory M. Utter, Esq., Keating, Muething & Klekamp, P.L.L., Cincinnati, OH, Jonathan M. Wagner, Esq., Kramer Levin Naftalis & Frankel, LLP, New York, NY, George R. Blakey, Esq., Notre Dame Law School, Notre Dame, IN, for Plaintiffs.

Irwin Rochman, Esq., Tesser, Ryan & Rochman, LLP, New York, NY, for Defendants UNITE HERE, Bruce Raynor, Ahmer Qadeer, Keith Mestrich, Elizabeth Gres, Peter Demay, Katie Unger, and Stefan Antonowicz.

Andrew D. Roth, Esq., Matthew Clash–Drexler, Esq., Leon Dayan, Esq., Robert M. Weinberg, Esq., Bredhoff & Kaiser, P.L.L.C., Washington, DC, for Defendants Change to Win and International Brotherhood of Teamsters.

Tobin J. Romero, Esq., Williams & Connolly LLP, Washington, DC, for Defendant UNITE HERE.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY, III, District Judge:

In a sprawling 334 paragraph amended complaint larded with seventy-nine exhibits (the "Complaint"), Plaintiffs Cintas Corporation, Cintas Corporation No. 2, Cintas Corporation No. 3, and Cintas Holdings LLC (collectively, "Cintas") bring claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Lanham Act, and Ohio state-law claims against Defendants UNITE HERE, Change To Win, the International Brotherhood of Teamsters (the "Teamsters"), Bruce Raynor, Ahmer Qadeer, Keith Mestrich, Elizabeth Gres, Peter Demay, Katie Unger, Stefan Antonowicz, and numerous John Doe Defendants (collectively, the "Defendants").

Defendants move pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss the RICO and Lanham Act claims. For the following reasons, Defendants' motion to dismiss is granted. Because this Court declines to exercise supplemental jurisdiction over the remaining state law claims, this action is dismissed.

## BACKGROUND

On a motion to dismiss, this Court accepts the allegations of the Complaint as true. The Complaint is not the "short and plain statement" contemplated by Rule 8; it is a manifesto by a Fortune 500 company that is more a public relations piece than a pleading. Nevertheless, this Court has waded through the pleading to summarize the material allegations.

Cintas is the largest uniform supplier in North America and employs more than 34,000 people. (First Amended Complaint dated June 3, 2008 ("Amended Complaint") ¶ 3.) It owns numerous trademark registrations for the use of the "CINTAS" mark. (Amended Complaint ¶¶ 248–50.) Defendants UNITE HERE and the Teamsters are two labor unions, which are members of Defendant Change to Win, an unincorporated association of labor unions. (Amended Complaint ¶¶ 21–23.) The indi-

viduals named as defendants are employees of UNITE HERE. (Amended Complaint ¶¶ 24–30.)

As part of their campaign to organize Cintas employees, Defendants seek a "card-check/neutrality agreement" requiring Cintas to recognize UNITE HERE and the Teamsters as the employees' bargaining agents, if the unions can obtain cards signed by a majority of eligible workers stating a desire to join a union. (Amended Complaint ¶ 9.) Such an agreement allows a union to be recognized as the bargaining agent without a secret ballot election regulated by the National Labor Relations Board. (Amended Complaint ¶ 9.) In order to secure this agreement, Defendants have engaged in a so-called "Corporate Campaign" against Cintas, which includes "[f]alsely portraying Cintas as a company with 'a long history of anti-unionism' that 'bullies, harasses, intimidates and terminates workers who want to join unions,' [and painting] Cintas as a company bent on racist, sexist and illegal acts." (Amended Complaint ¶ 94.) Defendants reached out to Cintas's customers, especially small minority owned businesses to pressure Cintas. (Amended Complaint ¶ 98.) Defendants also communicated "disparaging information about Cintas to Cintas's stakeholders by mailing and faxing letters and flyers containing misleading and/or negative statements about Cintas, distributing newsletters, posting press releases, creating web pages, and sending anti-Cintas letters to investors and stock analysts." (Amended Complaint ¶ 102.)

UNITE HERE operates the "Cintas Exposed" website located at www.cintasexposed.org, which targets Cintas's customers. (Amended Complaint ¶¶ 111–12.) The website includes informational postings, labeled "Consumer Bulletins," one of which encourages Cintas's customers to "check their weekly invoices, 'object to unauthorized products and services,' 'demand notification of changes in products and services,' 'refuse so-called trial products and services,' and to 'know your contract.'" (Amended Complaint ¶ 115.) Some of the bulletins incorporate the "CINTAS" trademark. (Amended Complaint ¶¶ 115–16.) The website also allows Cintas customers to generate complaint letters, cancellation letters, "stop auto-renewal letter[s]" (which prevent Cintas from renewing annual contracts automatically), and a complaint log to document problems with Cintas's service. (Amended Complaint ¶ 123.) It also advises customers to check their invoices, object to price increases, and demand notification of price increases. (Amended Complaint ¶ 123.) Finally, the website provides sample Cintas contracts with explanations of the "fine print" in the contract (Amended Complaint ¶ 124), and a forum for the public to share negative stories about Cintas. (Amended Complaint ¶ 125.)

Cintas alleges that this website "compete[s] unfairly" and generates profits for Defendants by "disparaging Cintas and its business practices, products and services, confusing Cintas's customers, diverting customers, sales and profits away from Cintas and portraying Cintas in a bad light to the general consuming public." (Amended Complaint ¶ 111.) According to the Amended Complaint, some of Cintas's customers decline to do any further business with Cintas after viewing the materials on www.cintasexposed.org. (Amended Complaint ¶¶ 151–59.)

The cintasexposed.org website links to the UNITE HERE homepage, which includes the "UNITE HERE Store." (Amended Complaint ¶ 241.) The "UNITE HERE Store" sells personal apparel and other sundry items bearing the union's logo. (Amended Complaint ¶ 242.) The UNITE HERE homepage also links to

"Buy Union" websites promoting "Union Made Work Uniforms" and "Union Made Apparel and Products." Those webpages in turn link to webpages containing PDF lists of uniform manufacturers who employ unionized workers. (Amended Complaint ¶¶ 243–45.) Many of those companies compete with Cintas. (Amended Complaint ¶ 245.)

The cintasexposed.org website has a disclaimer stating "CintasExposed.org is an independent website posted by the labor union UNITE. It contains criticism and information about the uniform and facilities services rental company Cintas...." (Amended Complaint Ex. 78: Google® Search Results.) However, the disclaimer does not appear on every search engine. (Amended Complaint ¶ 257.) Cintas alleges that the website's name "Cintas Exposed" creates "initial interest confusion," and draws in unsuspecting users who believe the website is related to Cintas. (Amended Complaint ¶¶ 254, 257, 260.)

Defendants also maintain another website, www.uniformjustice.org, targeted at Cintas employees. (Amended Complaint ¶¶ 130–31.) This website includes a "health and safety survey" that Cintas alleges is "designed to solicit information from disgruntled employees that can be used by Defendants...." (Amended Complaint ¶ 133.)

Change to Win's website includes a "Hall of Shame" accusing Cintas of "Creating Poverty Level Jobs," "Corporate Greed and Excess," along with discrimination, "Putting Workers and Communities at Risk," and "Breaking U.S. Laws." (Amended Complaint ¶ 137.) UNITE HERE'S and the Teamsters's websites also contain similar charges against Cintas. (Amended Complaint ¶¶ 139–42.)

According to the Complaint, Defendants also attempted to convince NASCAR to drop Cintas as a preferred supplier. (Amended Complaint ¶¶ 143–44.) Defendants "employ[ ] such colorful slogans as 'Cintas Stains NASCAR' and 'Race Naked' (which encourages drivers to race naked rather than wear a Cintas uniform)." (Amended Complaint ¶ 147.) In addition, Defendants distribute anti-Cintas literature at NASCAR races and maintain a website, www.notonmytrack.info, that targets NASCAR fans. (Amended Complaint ¶¶ 148–49.)

Finally, the Complaint alleges Defendants contacted investment analysts covering Cintas and made "numerous derogatory, negative, and misleading statements about Cintas ..." in an effort to drive down Cintas's stock price. (Amended Complaint ¶ 160–68.)

## DISCUSSION

### I. Legal Standard

On a motion to dismiss, the Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("We have declined to read *Twombly*'s flexible 'plausibility standard' as relating only to antitrust cases.").

A court may also consider "documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."

*Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991).

## II. *RICO Claims*

■ To establish a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) *see also* 18 U.S.C. §§ 1962(c), 1962(d). A "pattern of racketeering activity" requires at least two "predicate acts" in a ten-year period. *See* 18 U.S.C. § 1961(5). Cintas alleges three predicate acts: (1) attempted extortion under the Hobbs Act, 18 U.S.C. § 1951; (2) violations of the Travel Act, 18 U.S.C. § 1952; and (3) violations of Ohio's extortion statute, Ohio Rev.Code § 2905.11. *See* 18 U.S.C. § 1961(1).

### A. *Attempted Extortion*

■ Attempted extortion under the Hobbs Act is defined as attempting to "obtain[ ] the property of another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. § 1951(b)(2). Cintas alleges that Defendants attempted to obtain property—the card-check/neutrality agreement—through fear of economic loss. Generally, fear of economic loss is not inherently wrongful, except "when employed to achieve a wrongful purpose...." *United States v. Clemente,* 640 F.2d 1069, 1077 (2d Cir.1981). One "wrongful use" of fear of economic loss is when a party "obtains property to which '[it] has no lawful claim.'" *Clemente,* 640 F.2d at 1076 (quoting *United States v. Enmons,* 410 U.S. 396, 400, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973)). A Hobbs Act violation arises under the *Enmons–Clemente* framework when a defendant exploits a plaintiff's fear of economic loss and receives property to which it has no lawful claim. *See Viacom Int'l, Inc. v. Icahn,* 747 F.Supp. 205, 213 (S.D.N.Y.1990), *aff'd on other grounds,* 946 F.2d 998 (2d Cir.1991).

While Cintas's Complaint is silent on the question of whether a card-check/neutrality agreement confers any benefit on an employer, courts have held uniformly that such an agreement provides benefits to both an employer and a union. *See Hotel Employees & Rest. Employees Union, Local 57 v. Sage Hospitality Res., LLC,* 390 F.3d 206, 219 (3d Cir.2004) ("[A] Neutrality Agreement ... benefits both parties with efficiency and cost saving ...."); *see also Hotel & Rest. Employees Union Local 217 v. J.P. Morgan Hotel,* 996 F.2d 561, 566 (2d Cir.1993) ("[Under a card-check/neutrality agreement, the employer and union] each g[i]ve[s] up rights under the [National Labor Relations Act]—the union agree[s] to forgo picketing and the [employer] agree[s] to accept the results of a card check—in an effort to make the union recognition process less burdensome for both."). Thus, Cintas receives something of value from reaching an agreement with UNITE HERE and the Teamsters.

■ Where a victim receives something of value in return for capitulating to fear of economic loss, the exchange of property may be the product of lawful "hard-bargaining" or unlawful extortion. *See Viacom,* 747 F.Supp. at 213. The distinction between lawful and unlawful conduct in such a circumstance is drawn by examining whether the victim has a "preexisting right to pursue his business interests free of the fear he is quelling...." *Viacom,* 747 F.Supp. at 213. When a party does not have the right to pursue its business interests unchecked and receives a benefit, it cannot be the victim of extortion. *See Viacom,* 747 F.Supp. at 213; *see also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 523–25 (3d Cir.1998).

Because Cintas would receive some benefit from a card-check/neutrality

agreement, it must show that it has a right to pursue its business free from Defendants' activities. However, Cintas does not have a right to operate free from any criticism, organized or otherwise. *See Metro. Opera Ass'n v. Local 100, HERE,* 239 F.3d 172, 177–78 (2d Cir.2001) ("[W]ithin the labor context, in seeking to exert social pressure on [plaintiff], the Union's methods may be harassing, upsetting or coercive, but unless we are to depart from settled First Amendment principles, they are constitutionally protected."); *see also Beverly Hills Foodland v. United Food & Commercial Workers Local 655,* 39 F.3d 191, 197 (8th Cir.1994) ("[T]he prime directive in the Union [organizing] campaign, a boycott of [the target employer] is ... constitutionally safeguarded," as is the accompanying "activity of peaceful pamphleteering."). To the extent that any of Defendants' statements are defamatory, then Cintas can pursue those claims under state tort laws. Accordingly, Cintas's allegations do not rise to the level of criminal extortion.[1]

### B. *Remaining Predicate Acts*

■ The Travel Act makes it a crime to travel between states with the intent to commit specified crimes listed in the statute. 18 U.S.C. § 1952. The only crimes alleged in the Complaint are extortion under the Hobbs Act and Ohio state law. Because Cintas has not pled a violation of the Hobbs Act, the only remaining crime is extortion under Ohio law. However, RICO and the Travel Act require that a predicate act involving extortion must involve conduct which is "capable of being generically classified as extortionate." *Scheidler v. Nat'l Org. for Women, Inc.,* 537 U.S. 393, 409, 123 S.Ct. 1057, 154

L.Ed.2d 991 (2003); *see also United States v. Nardello,* 393 U.S. 286, 296, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969) (adopting the generic definition of extortion for Travel Act purposes). Extortion is generically defined as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." *Scheidler,* 537 U.S. at 410, 123 S.Ct. 1057. Because the differences between generic extortion and Hobbs Act extortion as alleged in the Complaint are immaterial, Defendants' conduct is not susceptible to classification as generic extortion. Thus, regardless of what extortion is under Ohio state law, Defendants' conduct does not establish a Travel Act violation or a predicate act under RICO, and Cintas's RICO claims are dismissed.

### III. *The Lanham Act Claims*

#### A. *Trademark Infringement and Unfair Competition*

■ To establish a trademark infringement claim under 15 U.S.C. § 1114 for a registered trademark or under 15 U.S.C. § 1125(a) for an unregistered trademark, a plaintiff must establish "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without the plaintiff's consent ... [and] [ (6) ] that defendant's use of that mark is likely to cause confusion as to the affiliation, connection, or association of defendant with plaintiff, or as to the origin, sponsorship, or approval of the defendant's goods, services, or commercial activities by plaintiff." *1–800 Contacts, Inc. v. WhenU.Com, Inc.,* 414 F.3d

---

**1.** Cintas's reliance on *A. Terzi Prods. v. Theatrical Protective Union,* 2 F.Supp.2d 485 (S.D.N.Y.1998), is misplaced. In that case, Defendants sought a wrongful purpose—a collective bargaining agreement without any process to recognize them as the collective bargaining agent—and wrongful means—the use of violence and threats of violence—to achieve their goal.

400, 406–07 (2d Cir.2005) (internal citation and quotation marks omitted).

In assessing the last factor, the likelihood of confusion, this Court considers the following eight factors: (1) strength of the senior user's mark; (2) degree of similarity between the marks; (3) competitive proximity of the product; (4) likelihood that the senior user will bridge the gap; (5) evidence of actual confusion; (6) defendant's bad faith; (7) the quality of defendant's product; and (8) sophistication of the relevant group. *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir.1961). "[T]he evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather a court should focus on the ultimate question of whether consumers are likely to be confused." *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45–46 (2d Cir.2000).

 At least four of the factors weigh heavily in Defendants' favor. First, there is no proximity between the parties' goods or services. Defendants and Cintas occupy entirely distinct spheres. Second, "[b]ridging the gap refers to the senior user's interest in preserving avenues of expansion and entering into related fields." *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 504 (2d Cir.1996) (citation and quotation marks omitted). Here, there is no likelihood that either Cintas or Defendants will enter the others' field. Third, bad faith depends on "whether the [Defendants] adopted [Cintas's] mark with the intention of capitalizing on [Cintas's] reputation and goodwill and any confusion between [their] and the senior user's product." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 482–83 (2d Cir.1996). Cintas does not allege any effort by Defendants to associate themselves with Cintas. On the contrary, Defendants' entire effort is directed at attacking Cin-

tas. Finally, Cintas's customer base is institutional and commercial users of uniforms, a sophisticated corporate audience that is not likely to be confused by Defendants' actions.

Moreover, Defendants are not using the "CINTAS" mark as a "source identifier", but rather solely to criticize Cintas's corporate practices. *See United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86, 92–93 (2d Cir.1997) (noting there is no justification for relief under Section 1114 and 1125(a), when "the defendants ... us[e] plaintiff's mark not in a manner that would create confusion as to the source, but rather as part of a message whose meaning depend[s] on reference to plaintiff's product"). While the materials available on Defendants' websites may disparage Cintas, the likelihood that Cintas's actual or potential customers would be confused about who provides CINTAS goods and services is remote.

 "[Initial interest] confusion arises when a consumer who searches for the plaintiff's website with the aid of a search engine is directed instead to the defendant's site because of a similarity in the parties' website addresses." *Savin Corp. v. The Savin Group*, 391 F.3d 439, 462 n. 13 (2d Cir.2004). However, "[b]ecause consumers diverted on the Internet can more readily get back on track than those in actual space, thus minimizing the harm to the owner of the searched-for site from consumers becoming trapped in a competing site, Internet initial interest confusion requires a showing of intentional deception." *Savin*, 391 F.3d at 462 n. 13. Here, the allegations do not create any plausible inference of intentional deception. First, no consumer looking for a uniform company's website would mistakenly visit "cintasexposed.org" or any of the affiliated websites. Second, the website, all of its content, and its prominent dis-

claimer show that the Defendants were transparent in their disdain for Cintas. The likelihood of confusion among consumers visiting their websites is implausible. Accordingly, Cintas's trademark infringement and unfair competition claims are dismissed.

### B. *Trademark Dilution*

■ To establish a trademark dilution claim under the Lanham Act, a plaintiff must show that: (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. *See Savin*, 391 F.3d at 448–49 (citing 15 U.S.C. § 1125(c)). The "commercial use in commerce" requirement of Section 1125(c) must be performed for profit. *SMJ Group, Inc. v. 417 Lafayette Rest., LLC*, 439 F.Supp.2d 281, 292 (S.D.N.Y. 2006).

■ Cintas alleges that Defendants are using the "CINTAS" marks for profit based on the fact that the www. cintasexposed.org website links to the UNITE HERE website, which in turn links to the UNITE HERE store where the union sells t-shirts, pins and other sundry items; Defendants' are attempting obtain a card-check/neutrality agreement; and Defendants' desire to gain pension and union dues from Cintas's employees. The twice-removed links to a union "store" is at least one bridge too far and insufficient to establish the use of the CINTAS mark for profit. *See Utah Lighthouse Ministry v. Found., for Apologetic Info. & Research*,

527 F.3d 1045, 1053 (10th Cir.2008) (holding that "the roundabout path to the commercial advertising of others is simply 'too attenuated' ") (quoting *Bosley Med. Inst. v. Kremer*, 403 F.3d 672, 679 (9th Cir.2005)).[2] Second, an effort to obtain a card-check/neutrality agreement does not represent an attempt to profit. *See Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir.2008) (holding that concessions made by employer in a card-check/neutrality agreement do not represent a thing of monetary value to a union). Finally, for Defendants to obtain union dues and pension contributions from Cintas's employees, the employees must sign cards accepting UNITE HERE or the Teamsters as their union. This is too attenuated and independent from the accused conduct to support any inference that the use is an attempt to profit. *See Playtex Prods., Inc. v. Procter & Gamble Co.*, No. 02 Civ. 8046(WHP), 2003 WL 21242769, at *5 (S.D.N.Y. May 28, 2003) (requiring a link between the conduct and damages). Accordingly, Cintas's claim for trademark dilution is dismissed.

### C. *Cybersquatting*

■ To state a claim for Cybersquatting under 15 U.S.C. § 1125(d), plaintiff must be the owner of a "famous mark" and show; (1) that a domain name "is identical or confusingly similar to, or dilutive of" the owner's mark; and (2) that the defendant registered the domain name with a "bad faith intent to profit" from the name. *See* 15 U.S.C. § 1125(d). As discussed above, the allegations by Cintas are insufficient to establish that the Defendants' use is for profit. Accordingly, Cintas's cybersquat-

---

**2.** At argument, Cintas's counsel argued that the Uniform Resource Locater ("URL") www. cintasexposed.net takes the user directly to the UNITE HERE website, which in turn contains a link to the UNITE HERE store. However, there is no allegation that any search engine will take a user to this URL or that besides typing the URL in directly any user would arrive there. Thus, this Court will not consider this conclusory allegation.

ting claim under 15 U.S.C. § 1125(d) is dismissed.

## IV. *The State Law Claims*

A court "may decline to exercise supplemental jurisdiction over a [pendent state law] claim" if the court "has dismissed all [federal] claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Once [a court's] discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity in deciding whether to exercise jurisdiction." *Kolari v. N.Y.–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) (internal citation and quotation marks omitted).

There is no diversity between the parties. Discovery has not yet begun, and the action is in its infancy. Convenience and comity weigh heavily against this Court retaining jurisdiction. The remaining claims arise under Ohio state law. Cintas and its counsel are based in Ohio, and many of the Defendants are not from New York. There is no reason compelling a New York court to hear these Ohio state law claims. Accordingly, Defendants' motion to dismiss the state law claims for lack of subject matter jurisdiction is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the First Amended Complaint is granted. The Clerk of the Court is directed to dismiss all pending motions as moot and to mark this case as closed.

SO ORDERED.