NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

NICHOLAS GRIFFIN,            )
                                        )
          Appellant,      )
                                          )
v.                             )      Case No. 2D15-1616
                                          )
ARX HOLDING CORPORATION,   )
                                        )
          Appellee.       )
                                        )

Opinion filed October 14, 2016.

Appeal from the Circuit Court for Pinellas
County; Anthony Rondolino, Judge.

S. Douglas Knox, Paul E. Parrish, and
Kelli A. Edson of Quarles & Brady LLP,
Tampa, for Appellant.

Sylvia H. Walbolt, Steven C. Dupré, Kevin
P. McCoy, and Nicholas A. Brown of Carlton
Fields Jorden Burt, P.A., Tampa, for
Appellee.


LaROSE, Judge.


          Nicholas Griffin appeals a final summary judgment, a judgment entered

after jury trial, and several post-trial orders entered in favor of his former employer, ARX

Holding Corporation, a company that operated several insurance businesses in Florida.

We have jurisdiction. Fla. R. App. P. 9.030(b)(1)(A).

Mr. Griffin sued ARX for compensation due under the terms of an employment contract. ARX contended that the contract was void, illegal, and unenforceable. ARX counterclaimed for payment due on a promissory note executed and delivered by Mr. Griffin. The trial court entered a final summary judgment on Mr. Griffin's compensation claim. A jury found for ARX on its counterclaim. After careful review of the record, and with the benefit of oral argument, we affirm on all issues raised by Mr. Griffin.

Background

Mr. Griffin is the former chief financial officer of United Insurance Holdings Corp. Sometime in 2009, he began discussions with John Auer, ARX's chief executive officer. Mr. Auer wanted to hire Mr. Griffin as ARX's CFO. During their discussions, Mr. Griffin told Mr. Auer that he had a felony conviction.[1] As we will see, that conviction hampered Mr. Griffin's ability to serve as the CFO of insurance-related businesses under federal and state law. Nevertheless, Mr. Griffin advised Mr. Auer that the conviction would not prevent him from serving as ARX's CFO. As further assurance, Mr. Griffin told Mr. Auer that he would seek a waiver from Florida insurance regulators of any statutory disqualification caused by his conviction. Apparently minimizing any concern that the conviction would impact his employment, Mr. Griffin told Mr. Auer that the Florida Office of Insurance Regulation (FOIR), aware of his conviction, allowed him

---

[1] In 1998, Mr. Griffin pleaded guilty to and was convicted of extortion. See 18 U.S.C. § 1952(a)(3). "Extortion is generically defined as 'obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats.' " Cintas Corp. v. Unite Here, 601 F. Supp. 2d 571, 578 (S.D.N.Y. 2009) (quoting Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 410 (2003)).

to serve as United's CFO; he expected no objection from FOIR to his employment by ARX. Reality proved less rosy.

In 2002, while Mr. Griffin worked for United, FOIR notified United that Mr. Griffin's conviction barred him from serving as an officer of a United subsidiary engaged in the insurance business. In an effort to cure FOIR's concern, United maintained Mr. Griffin as the CFO of only the holding company; it appointed him controller of the related insurance companies. Apparently, the controller was not an officer level position within United's group of companies.

Sometime in 2008, United sought FOIR approval to merge with another company. Under the terms of a 2009 consent order with the insurance regulator, United agreed to replace Mr. Griffin as CFO. FOIR's Deputy Insurance Chief, Belinda Miller, testified that the consent order barred Mr. Griffin from being an officer of United or of its insurance subsidiaries. Mr. Griffin testified at the trial on ARX's counterclaim that United and FOIR reached an accommodation that would allow Mr. Griffin to continue as United's CFO. Our record belies that assertion. Indeed, after further discussions between FOIR and United, FOIR formally denied a waiver that would have allowed Mr. Griffin to work as an officer of an insurance business. Apparently, Mr. Griffin continued to serve as an officer of United's nonpublicly traded holding company. Mr. Auer was unaware of the extent of Mr. Griffin's problems with FOIR, specifically the consent order requiring United to remove Mr. Griffin as CFO.

By early June 2009, ARX extended, and Mr. Griffin accepted, an offer of employment as ARX's CFO. Because ARX was a holding company and not an insurance company, Mr. Griffin assumed that FOIR would not object to this new employment. The distinction, however, has little meaning. First, Mr. Griffin conceded in

- 3 -

the trial court that his position with ARX involved the business of insurance.[2]  Second, ARX's Board of Directors appointed Mr. Griffin as the Vice President and CFO of ARX and of its subsidiary insurance businesses.

Mr. Griffin's compensation package provided for an annual salary of $150,000.  He would also "participate as an officer in the employee bonus plan . . . subject to a monthly minimum of $12,000 for 24 months."  ARX also offered Mr. Griffin stock and stock options that would vest over several years, contingent upon his continued employment.  No one disputes that Mr. Griffin was an at-will employee.

The stock and stock option components of Mr. Griffin's compensation terms presented potential tax liabilities for Mr. Griffin.  Against the recommendation of his accountant, Mr. Griffin filed an election under section 83(b)[3] of the Internal Revenue

---

[2][B]usiness of insurance means—

 (A) the writing of insurance, or

 (B) the reinsuring of risks,

by an insurer, including all acts necessary or incidental to such writing or reinsuring and the activities of persons who act as, or are, officers, directors, agents, or employees of insurers or who are other persons authorized to act on behalf of such persons . . . .

18 U.S.C. § 1033(f)(1).

[3]Election to include in gross income in year of transfer.—

(1) In general.--Any person who performs services in connection with which property is transferred to any person may elect to include in his gross income, for the taxable year in which such property is transferred, the excess of--

(A) the fair market value of such property at the time of transfer . . . , over

(B) the amount (if any) paid for such property.

Code. By doing so, Mr. Griffin incurred an immediate $182,000 tax liability, although he had not acquired any stock or exercised any of the stock options.

Mr. Griffin explained to Mr. Auer that he could not pay the tax liability. Mr. Griffin claims that Mr. Auer told him that ARX would loan him the money and later forgive the debt. Mr. Auer claimed otherwise. Nevertheless, again, against the advice of his accountant, Mr. Griffin drafted, signed, and delivered a promissory note in favor or ARX in order to get the funds needed to satisfy his tax debt. The promissory note allowed ARX to demand payment upon written notice. Seemingly consistent with Mr. Auer's recollection of events, the note did not obligate ARX to forgive the debt.

Mr. Auer attempted to help Mr. Griffin in his efforts to obtain a waiver from FOIR so that he could serve as ARX's CFO. He contacted several regulators on Mr. Griffin's behalf. Ultimately, FOIR would not yield; it would not grant Mr. Griffin a waiver. As the waiver story unfolded, however, it does not appear that ARX's Board of Directors knew about Mr. Griffin's conviction or any statutory restrictions on his position until sometime in March 2010. In the meantime, Mr. Griffin performed his duties for ARX. As a result, he received his salary and employee bonuses. On March 1, 2010, the Board approved an additional $215,000 bonus for Mr. Griffin, based on his 2009 job performance. The bonus was payable immediately. Mr. Auer, however, withheld the bonus pending a final decision from FOIR concerning a waiver. Mr. Griffin never got his bonus. He never got the waiver. As a result, Mr. Auer terminated Mr. Griffin's employment.

---

26 U.S.C. § 83(b).

<u>Summary Judgment and Trial</u>

To summarize a lengthy procedural history in the trial court, we note that the trial court granted ARX a summary judgment on the compensation issue. The trial court found the employment contract illegal and unenforceable. Consequently, Mr. Griffin could not collect his $215,000 bonus.

ARX's counterclaim on the promissory note went to jury trial. The jury found in favor of ARX. The jury found that Mr. Griffin owed ARX $200,150.13. Ample evidence supports the jury's verdict and the trial court's subsequent judgment on this claim. We need say nothing more on this issue.

Mr. Griffin's claim for the unpaid bonus is more problematic. We review the grant of summary judgment de novo. <u>See</u> <u>Volusia Cty. v. Aberdeen at Ormond Beach, L.P.</u>, 760 So. 2d 126, 130 (Fla. 2000). "Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." <u>Dewar v. Dough Boy Pizza, Inc.</u>, 184 So. 3d 1169, 1170 (Fla. 2d DCA 2015) (citation omitted).

<u>Statutes Restricting Mr. Griffin's Employment</u>

Under federal law, "[a]ny individual who has been convicted of any criminal felony involving dishonesty or a breach of trust, . . . and who willfully engages in the business of insurance whose activities affect interstate commerce or participates in such business" shall be punished by fine or imprisonment of up to five years, or both. 18 U.S.C. § 1033(e)(1)(A).[4] The federal statute continues: "Any individual who is

---

[4]Although Florida has not specifically ruled on this issue, many states consider extortion to be a crime of dishonesty. <u>See</u> <u>Com v. Cascardo</u>, 981 A.2d 245, 254 (Pa. Super. Ct. 2009) ("Given that theft by unlawful taking, retail theft, receiving stolen property, theft by extortion, and robbery are crimes involving dishonesty . . . .")

- 6 -

engaged in the business of insurance whose activities affect interstate commerce and who willfully permits the participation described in subparagraph (A) shall be fined as provided in this title or imprisoned not more than 5 years, or both."  18 U.S.C. § 1033(e)(1)(B).  The parties have pointed us to nothing in § 1033(e) that would impose criminal liability on a corporate entity that hires someone like Mr. Griffin.  Regardless, on its face, § 1033(e) exposes Mr. Griffin to criminal prosecution for serving as CFO of ARX or its insurance subsidiaries.  Of course, a person like Mr. Griffin "may engage in the business of insurance or participate in such business if such person has the written consent of any insurance regulatory official authorized to regulate the insurer, which consent specifically refers to this subsection."  18 U.S.C. § 1033(e)(2).  Reading (e)(1) and (e)(2) together, we find it obvious that criminal exposure continues until the convicted felon "has"—obtains—a waiver from the appropriate insurance regulator.  Anticipation is not enough.

Florida law imposes a similar statutory disqualification for some felons.

> [FOIR] may deny, suspend, or revoke the authority to transact insurance in this state of any insurer if any person . . . who exercises or has the ability to exercise effective control over the insurer, or who influences or has the ability to

_____

(citations omitted); Wilcher v. State, 697 So. 2d 1087, 1117 (Miss. 1997) (Sullivan, J., dissenting) ("Extortion is a dishonest crime . . . ."); State v. Brodene, 493 N.W.2d 793, 796 (Iowa 1992) ("[W]e think extortion is clearly an example of dishonesty."); State v. Prutting, 669 A.2d 1228, 1236 n.6 (Conn. App. Ct. 1996) (holding that extortion is a form of larceny and noting that "crimes involving larcenous intent imply a general disposition toward dishonesty"); State v. Musto, 454 A.2d 449, 454 (N.J. Super. Ct. Law Div. 1982) ("The crimes of extortion and bribery are clearly crimes which involve dishonesty."); Lawyer Disciplinary Bd. v. Moore, 591 S.E.2d 338, 355 (W. Va. 2003) (Starcher, C.J., concurring) (explaining that extortion involved dishonesty).  "In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity." Gordon v. U.S., 383 F.2d 936, 940 (D.C. Cir. 1967).  We see no reason to think that Florida would not follow this prevalent view.

influence the transaction of the business of the insurer, has been found guilty of, or has pleaded guilty . . . to, any felony or crime punishable by imprisonment of 1 year or more under the law of the United States or any state thereof or under the law of any other country which involves moral turpitude,[5] without regard to whether a judgment of conviction has been entered by the court having jurisdiction in such case. However, in the case of an insurer operating under a subsisting certificate of authority, the insurer shall remove any such person immediately upon discovery of the conditions set forth in this paragraph when applicable to such person or upon the order of the office, and the failure to so act by said insurer shall be grounds for revocation or suspension of the insurer's certificate of authority.

§ 624.404(3)(c), Fla. Stat. (2009). Section 624.15, Florida Statutes makes "each willful violation of this code or rule of the department, office, or commission . . . a misdemeanor of the second degree." The statute does not identify a waiver contemplated by 18 U.S.C. § 1033(e)(2). However, the testimony of FOIR witnesses demonstrated that such a waiver process was available in Florida.

As a matter of law, Mr. Griffin was statutorily barred from serving as CFO. He never obtained the waiver contemplated by 18 U.S.C. § 1033(e)(2). On this basis, alone, ARX was within its right to fire Mr. Griffin and end any right to compensation going forward. The more puzzling question is whether Mr. Griffin was entitled to an earned bonus. The answer to that question hinges on whether his statutory disqualification stripped him of the right to enforce the employment contract.

---

[5]See note 4, supra. Extortion is a crime of moral turpitude. Pearl v. Fla. Bd. of Real Estate, 394 So. 2d 189, 191 (Fla. 3d DCA 1981) ("[Moral turpitude] has also been defined as anything done contrary to justice, honesty, principle, or good morals . . . ." (quoting State ex rel. Tullidge v. Hollingsworth, 146 So. 660, 661 (Fla. 1933))). The trial court ruled that the employment contract between ARX and Mr. Griffin was illegal and unenforceable. Implicitly, the trial court had to conclude that Mr. Griffin's prior conviction was for (1) a crime of dishonesty or breach of trust, (2) a crime punishable for more than one year involving moral turpitude, or (3) both.

<u>The Employment Contract Was Illegal as Against</u>
<u>Public Policy; Mr. Griffin Could Not Enforce Its Terms</u>

Mr. Griffin argues that ARX breached its implied covenant of good faith and fair dealing by failing to pay his bonus. He also argues that federal and state law did not automatically prohibit him from serving as an ARX officer. The law seems clear, however, that his conviction fell within the ambit of 18 U.S.C. § 1033(e)(1) and section 624.404(3)(c). Although Mr. Griffin argues that he was the CFO of only the holding company, the record reflects that he served as CFO of ARX's insurance subsidiaries, as well. He also conceded that he was involved in the insurance business. Thus, absent a waiver from an insurance regulator, Mr. Griffin was in violation of the law by serving as ARX's CFO. <u>See</u> <u>Beamer v. Netco, Inc.</u>, 411 F. Supp. 2d 882 (S.D. Ohio 2005).

The result may seem harsh, but we are persuaded by ARX's argument that the employment contract was void *ab initio*. Thus, Mr. Griffin was unable to enforce its terms. Our record discloses that Mr. Auer would not have employed Mr. Griffin had he known the seriousness of the conviction and its bar to Mr. Griffin's employment.[6]

> To determine whether a contract is voidable or void, courts typically ask whether the contract has been made under conditions that would justify giving one of the parties a choice as to validity, making it voidable, *e.g.*, a contract with an infant; or whether enforcement of the contract would violate the law or public policy irrespective of the conditions in which the contract was formed, making it void, *e.g.*, a contract to commit murder.

<u>Oubre v. Entergy Operations, Inc.</u>, 522 U.S. 422, 431 (1998) (Breyer, J., concurring).

"For a contract to be deemed unenforceable as illegal or contrary to public policy, its

---

[6]An employment contract may be void as so "abhorrent to public policy" where "the worker had been guilty of making a material, false and fraudulent representation without which he would not have been employed." <u>Still v. Norfolk & W. Ry. Co.</u>, 368 U.S. 35, 40-41 (1961).

purpose or object must be contrary to a law or policy of the state." <u>Alliance Metals, Inc.,</u> <u>of Atlanta v. Hinely Indus., Inc.</u>, 222 F.3d 895, 899 (11th Cir. 2000); <u>see also</u> <u>Beamer</u>, 411 F. Supp. 2d 882.

"[A] contract is not void, as against public policy, unless it is injurious to the interests of the public or contravenes some established interest of society." <u>Atl.</u> <u>Coast Line RR. Co. v. Beazley</u>, 45 So. 761, 785 (Fla. 1907) (quotations omitted).  "The public policy of a state or nation should be determined by its Constitution, laws, and judicial decisions . . . ." <u>Id.</u> at 786 (quotations omitted).  A contract of this nature may be against public policy and be rendered void.  That is what the trial court concluded in our case.

<u>Beamer</u>, 411 F. Supp. 2d 882, is most on point.  The district court applied Florida law to resolve a case with facts quite similar to those before us.  Mr. Beamer was engaged in the business of insurance but had a qualifying felony conviction under 18 U.S.C. § 1033(e)(1)(A).  <u>Beamer</u>, 411 F. Supp. 2d at 889.  It does not appear that Mr. Beamer held a high-ranking financial position like Mr. Griffin.  Yet, relying on Florida law, the district court observed that "a contract is against public policy when it cannot be performed without violating a statutory or other legal provision." <u>Id.</u> (citing <u>Local No. 234</u> <u>v. Henley & Beckwith</u>, 66 So. 2d 818, 821 (Fla. 1953)).  The district court held that Mr. Beamer's employment contract was void under 18 U.S.C. § 1033(e)(1)(A). <u>Id.</u>  As a result, Mr. Beamer could not pursue a claim for tortious interference with contract.

Mr. Griffin argues that <u>Beamer</u> is inapposite because the district court did not consider 18 U.S.C. § 1033(e)(2), the waiver provision.  Nothing in <u>Beamer</u>, however, indicates that Mr. Beamer held a waiver from an insurance regulator.  Here, there can be no dispute that Mr. Griffin had none.  <u>Beamer</u> is undeniably similar to our case.  Like

- 10 -

Mr. Beamer, Mr. Griffin could not be an officer of ARX or its insurance subsidiaries "without violating a statutory or other legal provision."  See id. at 889 (citing Local No. 234, 66 So. 2d 818, 821 (Fla. 1953)).

Gamble v. Mills, 483 So. 2d 826, 827 (Fla. 4th DCA 1986), too, is instructive.  There, the Fourth District affirmed a final order of the School Board declaring a teacher's employment contract to be null and void.  Id.  The contract provided that it "shall be null and void . . . if, at the beginning of the school fiscal year, the teacher does not hold a valid *regular* Teacher's certificate . . . which shall continue in force and effect through the school term."  Id.  Mr. Gamble argued that the lapse of his regular certificate did not prevent him from fulfilling his teaching duties.  However, pursuant to section 231.36, Florida Statutes (1983), the teacher "must hold a regular certificate."  Similarly, at no time during his employment with ARX did Mr. Griffin hold the "written consent" required by 18 U.S.C. § 1033(e)(2).  He was in violation of the law.

In Umbel v. Foodtrader.com, Inc., 820 So. 2d 372 (Fla. 3d DCA 2002), the Third District held that a partnership agreement violated Florida securities law and was unenforceable.  The partners formed the partnership to "obtain[] investors for companies, in exchange for a fee or commission."  Id. at 374.  The partners were not registered securities dealers; therefore, the partnership violated securities law.  Id.  Although the partners argued that several statutory exemptions potentially rendered performance of the contract legal, the "exemptions would [not] redeem the partnership agreement from the illegality realm."  Id.  The court concluded that "[i]t [was] of no moment that [the partners] could have obtained registration before consummating the contemplated transactions" because they had already violated the law and securing the registrations after would not have cured this.  Id. at 375.

- 11 -

Mr. Griffin advances an equally unpersuasive position. He argues that because 18 U.S.C. § 1033(e)(2) provides for a waiver, his employment contract is not illegal. He ignores the fact, however, that despite the efforts of Mr. Auer as well as his own, he never received a waiver from FOIR. Absent the waiver, Mr. Griffin could not engage in the business of insurance.

Section 489.128(l), Florida Statutes (2016), is also helpful by analogy. Under that statute, a "contract [] entered into . . . by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor." Id. The other party to the contract, however, retains its rights to enforce the contract against the contractor. See Earth Trades, Inc. v. T & G Corp., 42 So. 3d 929, 930 (Fla. 5th DCA 2010). Like an unlicensed contractor, Mr. Griffin, lacking a waiver, lacked the ability to enforce the terms of his employment contract against ARX.

We are mindful that our decision may seem unjust to Mr. Griffin. After all, he now foregoes any right to the bonus approved by ARX's Board. But, Mr. Griffin took the position with ARX, without a waiver, and, thus, as a matter of law, was in violation of the applicable statutes. Despite his history at United, Mr. Griffin assumed the risk that FOIR would not grant him a waiver. Without a waiver in hand, Mr. Griffin, in violation of 18 U.S.C. § 1033, began serving as the CFO of ARX and its subsidiary insurance businesses. We cannot ignore the fact that "an agreement that is violative of a provision of a constitution or a valid statute, or an agreement which cannot be performed without violating such a constitutional or statutory provision, is illegal and void." Local No. 234, 66 So. 2d at 821 (citing Lassiter & Co. v. Taylor, 128 So. 14 (Fla. 1930)). Congress and our Florida legislature have set limits on those who may engage

- 12 -

in the insurance business.  Those terms seem designed to protect the public welfare. We cannot lightly ignore these legislative dictates.

Conclusion

We affirm the grant of summary judgment as to Mr. Griffin's compensation claim as it relates to his bonus.  We also affirm the final judgment entered on ARX's counterclaim to enforce the promissory note signed by Mr. Griffin.  As to all other issues raised by Mr. Griffin, we affirm without further comment.

Affirmed.

CASANUEVA and MORRIS, JJ., Concur.