DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____


XYZ 300, LLC, a Florida Limited Liability Company LLC,
as trustee of the Mirror Lake Land Trust UAD March 20, 2013,

Appellant,

v.

CITY OF ST. PETERSBURG,

Appellee.


No. 2D2025-0674

_____

February 4, 2026

Appeal from the Circuit Court for Pinellas County; Thomas M.
Ramsberger, Judge.

Matthew D. Weidner and Jason Michael Kral of Weidner Law, P.A., St.
Petersburg, for Appellant.

Jackie Kovilaritch, City Attorney, and Joseph P. Kelly, Assistant City
Attorney, Office of the City Attorney, St. Petersburg, for Appellee.

LaROSE, Judge.

        XYZ 300, LLC, appeals the summary declaratory judgment entered
in favor of the City of St. Peterburg.  We have jurisdiction.  *See* Fla. R.
App. P. 9.030(b)(1)(A).  The trial court correctly found that Florida law

does not preempt operation of the City's Historic Preservation Ordinance. *See* St. Petersburg, Fla., Code § 16.30.070.2-.5 (2019).  We affirm.[1]

## **Background**

The Ordinance establishes a multistep process to secure historic designation within the City.  An applicant first submits an application. *See* Code § 16.30.070.2.5.B.1.  Thereafter, at least 15 days before issuance of ballots to parcel owners to gauge support for historic designation, the City conducts "a public information meeting to which all owners of parcels to be included in the proposed district" are invited. *See* Code § 16.30.070.2.5.B.2.a.  Ballots are then mailed, at the applicant's expense, to each parcel owner in the proposed district. Significantly, the ballot threshold for further action by the City requires the "support of the [proposed] historic district from the owners of 50 percent plus one tax parcel . . . of the tax parcels within the proposed district."  Code § 16.30.070.2.5.B.2.b.  "The response for each tax parcel shall be counted as one vote."  Code § 16.30.070.2.5.2.b.(3).

Even if the ballot threshold is met, historic designation is far from guaranteed.  Rather, the Community Planning and Preservation Commission reviews the application.  Within 60 days of receipt, the Commission must conduct a public hearing.  After, it has another sixty days to craft a recommendation.  Code § 16.30.070.2.5.G.1.  It may "[r]ecommend approval, denial[,] or approval with modifications" of the application.  Code § 16.30.070.2.5.G.1.

Within sixty days of the Commission's recommendation, the City Council must notice and "schedule a public hearing on the proposed designation."  Code § 16.30.070.2.5.I.  Ultimately, "[a]fter evaluating the

---

[1] XYZ's alternative due process argument lacks merit and warrants no further discussion.

testimony, evidence, and other material presented," Council members may "[a]pprove, deny[,] or approve with modifications . . . the Commission recommendation."  Code § 16.30.070.2.5.I.1.  The final word rests with the City Council.

Effective July 1, 2023, the legislature amended section 163.3167(8), Florida Statutes (2023), to prohibit local governments from using an initiative or referendum to obtain any development order or land development regulation:

> (a)   An initiative or referendum process in regard to any development order is prohibited.
>
> (b)   An initiative or referendum process in regard to any land development regulation is prohibited.

Ch. 2023-305, §§ 1, 8, Laws of Fla.

In March 2024, the City advised XYZ of a citizen-initiated "request to consider local historic designation" for a portion of the Mirror Lake neighborhood.  XYZ owns property there.

Fearing "significant burdens" of historic designation on its property, XYZ sued the City.  It sought a declaratory judgment that the Ordinance violated section 163.3167(8) by allowing an initiative or referendum to amend land development regulations.

The parties presented competing summary judgment motions. Following a hearing, the trial court sided with the City.

## Analysis

We review de novo the trial court's interpretation of a statute, as well as its grant of summary judgment.  *See State v. Waiters*, 347 So. 3d 533, 536 (Fla. 2d DCA 2022) ("[W]e apply de novo review to the trial court's interpretation of the statute."); *see also Scott v. Strategic Realty Fund*, 311 So. 3d 113, 116 (Fla. 2d DCA 2020) ("[W]e review the grant of

3

summary judgment de novo." (quoting *Griffin v. ARX Holding Corp.*, 208 So. 3d 164, 168 (Fla. 2d DCA 2016))).

Seemingly, all agree that the Ordinance is a land development regulation. According to XYZ, however, the trial court erred in finding that the ballot process was neither an "initiative" nor a "referendum." We disagree.

Not infrequently, statutory construction is a sticky wicket. *See State v. Crose*, 378 So. 3d 1217,1248 ("All must agree that '[s]ince words, by their nature, are imprecise instruments, . . . [statutes] . . . may have gray areas at the margins.' " (en banc) (LaRose, J., concurring) (alterations in original) (quoting *United States v. Barnes*, 295 F.3d 1354, 1366 (D.C. Cir. 2002))). Accordingly, "[w]hen we construe statutes, 'our first (and often only) step . . . is to ask what the Legislature actually said in the statute, based upon the common meaning of the words used' when the statute was enacted." *Tsuji v. Fleet*, 366 So. 3d 1020, 1025 (Fla. 2023) (quoting *Shepard v. State*, 259 So. 3d 701, 705 (Fla. 2018)). As the parties explain, their dispute concerns the meanings of "initiative" and "referendum" and whether the Ordinance fits either bill. If the answer is "yes," the Ordinance violates section 163.3167(8).

Fundamentally, statutory construction demands "that we give statutory language its plain and ordinary meaning, unless the words are defined in the statute or by the clear intent of the legislature." *Green v. State*, 604 So. 2d 471, 473 (Fla. 1992). Here, the statute defines neither "initiative" nor "referendum."

Consequently, we turn to a dictionary to discern meaning. *See Somers v. United States*, 355 So. 3d 887, 891 (Fla. 2022) ("When considering the [plain] meaning of terms used in a statute, this Court looks first to the terms' ordinary definitions[, which] . . . may be derived

4

from dictionaries." (alterations in original) (quoting *Debaun v. State*, 213 So. 3d 747, 751 (Fla. 2017)); *Green*, 604 So. 2d at 473. ("If necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary."); *Alvarez-Sowles v. Pasco County*, 386 So. 3d 224, 230 (Fla. 2d DCA 2024) ("[W]e note that the term [']upgrades['] is not defined in the statute. However, when the legislature does not define a term, we may derive its meaning from dictionaries.").[2]

We look to *Black's Law Dictionary*, "a tried-and-true legal dictionary," for guidance. *See State v. Herard*, 419 So. 3d 258, 268 (Fla. 6th DCA 2025) (White, J., concurring in part).

*Black's Law Dictionary* defines "initiative" as "[a]n electoral process by which a percentage of voters can propose legislation and compel a vote on it by the legislature or by the full electorate." *Initiative*, *Black's Law Dictionary* (12th ed. 2024).

The process laid out in the Ordinance is not an "initiative." It does not, in the first instance, compel a vote by the legislature, City Council, or the City's full electorate. As described earlier, subsequent to majority balloting by parcel owners, designation of a historic district requires further steps and approvals. The proposed historic designation

---

[2] We are mindful that

"[c]ontext always matters because sound interpretation requires paying attention to the whole law, not homing in on isolated words or even isolated sections." *Richman v. Calzaretta*, 338 So. 3d 1081, 1082 (Fla. 5th DCA 2022) (citation omitted). Therefore, a dictionary definition might be helpful, but it is not conclusive because dictionary definitions are acontextual. *Palumbo v. State*, 52 So. 3d 834, 835 (Fla. 5th DCA 2011) (Torpy, J., concurring); *accord United States v. Costello*, 666 F.3d 1040, 1044 (7th Cir. 2012).

*Kidwell Grp., LLC v. ASI Preferred Ins.*, 351 So. 3d 1176, 1178-79 (Fla. 5th DCA 2022).

instigated by a citizen request cannot proceed absent compliance with the Ordinance's requirements.

XYZ's concern that "a landowner's use of its own property should not be subject to the popular vote process" misses the mark. The result of the ballot process does not dictate historic designation. Rather, the Ordinance establishes an extensive quasi-judicial process that leaves ultimate approval or disapproval of historic designation to the City's elected officials. An application that meets the ballot threshold may still be rejected by the City Council—or fail well before reaching a Council vote. Conversely, an application that fails to meet the threshold may still find support from an elected Council member and ultimately be approved by the full body.[3] *See generally* City of St. Petersburg, Fla. Mun. Charter § 3.01, .05 (describing the City Council as "the governing body of the City" endowed with "all legislative powers"), .05 (establishing the City Council's voting procedures).

XYZ also ignores that the Ordinance's ballot process is not an "initiative" because it does not rely upon a "percentage of voters." *See Initiative*, *Black's Law Dictionary* (12th ed. 2024). Rather, the balloting requires the "support of the historic district from 50 percent plus one . . . of the *tax parcels* within the proposed district." *See* Code

---

[3] XYZ claims the fact that the ballot process is not the final step does not mean that the Ordinance does not utilize an initiative or referendum. After all, it tells us, "many elections are not the final step of a resolution." Moreover, XYZ observes that if the requisite majority balloting is not reached, the initiative fails and does not move forward and that, thus, the vote would in fact be final.

XYZ misconstrues the Ordinance. It merely creates a mechanism for citizens to submit historic designation requests for the City Council's consideration. XYZ suggests that the balloting is the end of the process on the merits. Not so. The final outcome, if the application clears several hurdles, rests with the City Council.

§ 16.30.070.2.5.B.2.b (emphasis added); *see also Voter, Black's Law Dictionary* (12th ed. 2024) (defining "voter" as "[*s*]*omeone* who engaged in the act of voting" or "[*s*]*omeone* who has the qualifications necessary for voting; specif., an individual who satisfies the eligibility standards and registration requirement necessary to cast a ballot in a given election" (emphasis added)).  The Ordinance does not consider the population within a given parcel or whether individuals therein are even registered voters.

Moving on, we note that *Black's Law Dictionary* defines "referendum" as "[t]he process of referring a state legislative act, a state constitutional amendment, or an important public issue to the people for *final approval* by popular vote."  *Referendum, Black's Law Dictionary* (12th ed. 2024) (emphasis added).  The Ordinance is not a "referendum"; the ballot results are not the final approval for historic designation.

XYZ asks that we utilize "the definitions of 'referendum' and 'initiative' . . . found in the glossaries of both the Florida House of Representatives and the Florida Senate."  We decline this entreaty.  These glossaries' definitions for "Initiative" are inapt; they concern amendments to the Florida Constitution.  *See* The Florida Senate, *Glossary* https://www.flsenate.gov/Reference/Glossary/1R (defining "Initiative" as "[a]n amendment to the State Constitution proposed by a number of electors.  An initiative is accomplished by filing with the Secretary of State a petition containing a copy of the amendment proposed which has been signed by a specified number of electors."); The Florida House, *Legislative Glossary* https://www.flhouse.gov/Sections/PublicGuide/glossary.aspx?Filter=I ("An amendment to the State Constitution proposed by a number of electors.  An initiative is accomplished by filing with the Secretary of

State a petition containing a copy of the amendment proposed that has been signed by a specified number of electors.").

Similarly, the glossaries' definitions for "Referendum" offer XYZ no succor. *See* The Florida Senate, *Glossary* https://www.flsenate.gov/Reference/Glossary/lR (defining a "referendum" as "[a] vote of the electors on a specific measure presented for approval or rejection on a ballot. A referendum is required as a condition for the effectiveness of a local bill if proof of publication has not been provided."); The Florida House, *Legislative Glossary* https://www.flhouse.gov/Sections/PublicGuide/glossary.aspx?Filter=R (same). The term "elector" is left undefined. Once again, *Black's Law Dictionary* fills in the gap. *See Elector, Black's Law Dictionary* (12th ed. 2024) (defining "elector" as a "[a] voter . . . [a] *person* who meets the voting requirements for age, residency, and registration and who has the present right to vote in an election" or "[s]*omeone* who chooses between alternative rights or claims" (emphases added)). As explained earlier, the Ordinance does not concern itself with individual voters. *See* Code § 16.30.070.2.5.B.2.b.

### Conclusion

The trial court properly granted summary declaratory judgment to the City. The Ordinance does not constitute an "initiative" or "referendum" that runs afoul of section 163.3167.

Affirmed.

NORTHCUTT and KELLY, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.