914 F.2d 53
 135 L.R.R.M. (BNA) 2436, 116 Lab.Cas. P 10,300
 RAILWAY LABOR EXECUTIVES ASSOCIATION; Brotherhood of
Locomotive Engineers; Brotherhood of Railroad Signalmen;
International Association of Machinist and Aerospace
Workers; International Brotherhood of Firemen and Oilers;
Transportation Communications International Union; American
Train Dispatchers Association; Brotherhood of Maintenance
of Way Employees; Brotherhood of Railway Carmen;
International Brotherhood of Electrical Workers; Sheet
Metal Workers International Association, Plaintiffs-Appellants,
v.
WHEELING & LAKE ERIE RAILWAY COMPANY; Norfolk & Western
Railway Company, Defendants-Appellees.
 No. 90-2683.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 16, 1990.
Decided Sept. 17, 1990.
As Amended Oct. 25, 1990.
 
 John O'Brien Clarke, Jr., argued (David J. Strom, on brief), Highsaw, Mahoney & Clarke, P.C., Washington, D.C., for plaintiffs-appellants.
 Jeffrey Stephen Berlin, argued (Mark E. Martin, Gregory W. Stevens, on brief), Richardson, Berlin & Morvillo, Washington, D.C., William P. Stallsmith, Jr., Norfolk, Va., Timothy A. Harr, Robert H. Wheeler, Oppenheimer, Wolff & Donnelly, Washington, D.C., for defendants-appellees.
 Before RUSSELL, WIDENER and HALL, Circuit Judges.
 K.K. HALL, Circuit Judge:
 
 
 1
 The Railway Labor Executives' Association and several other railroad labor unions ("Unions") appeal an order of the district court granting a preliminary injunction prohibiting the Unions from picketing facilities of intervenors/appellees Norfolk Southern Railway Co. and its subsidiaries ("NS") or from asking NS employees to aid displaced former NS employees in their dispute with appellee Wheeling & Lake Erie Railway Co. ("W & LE"). We find no error, and therefore affirm.
 
 I.
 
 2
 The factual background of this case is similar to Railway Labor Executives' Ass'n v. Chesapeake Western Ry., Nos. 90-2677(L). Over the past few years, NS has transferred over 800 miles of rail lines to small railroads that could operate the lines more profitably than NS. All such transfers are subject to the jurisdiction of the Interstate Commerce Commission ("ICC"). Where a line is transferred to an existing "carrier", the ICC imposes certain employee protective measures for the displaced workers. 49 U.S.C. Secs. 11343, 11347. However, these measures are not imposed on a transfer to a new entity that becomes a "carrier" only upon completion of the transaction. 49 U.S.C. Sec. 10901.
 
 
 3
 This case involves the appellant Unions' attempts to bargain with the purchaser of a former NS rail line, W & LE. W & LE is a newly-formed corporation; hence, the ICC did not order employee protective measures. As a result of this particular sale, 425 NS workers represented by the Unions were displaced. W & LE plans to operate the lines with approximately 50 management and 330 non-management workers, and has interviewed, given physicals to, and hired many of the affected NS workers.
 
 
 4
 On two occasions before hiring began, the Unions requested that W & LE negotiate with them concerning the manner in which W & LE would hire former NS workers. Basically, the Unions wanted the workers hired with seniority rights intact and, so far as possible, to the same jobs. W & LE refused to bargain.
 
 
 5
 On April 27, 1990, the Unions filed a two-count alternative complaint in district court. In Count I, the Unions sought to compel W & LE to bargain under the Railway Labor Act ("RLA"), 45 U.S.C. Secs. 151, et seq. In Count II, the Unions sought a declaratory judgment that they were free to resort to peaceful self-help (i.e., picketing) to attempt to resolve the labor dispute with W & LE.
 
 
 6
 On May 3, 1990, the Unions requested a preliminary injunction on Count I. The court denied this motion on May 10, and explained its denial in an opinion issued May 15, 1990. The court's reasoning was simple and correct. At the time, W & LE was not yet a "carrier" and had no "employees" within the meaning of Sec. 1 of the RLA, 45 U.S.C. Sec. 151. Therefore, the RLA could not impose an obligation on W & LE to bargain. The Unions do not appeal this ruling.
 
 
 7
 With one-half of their alternative complaint defeated, the Unions advanced the other. They informed the district court that they intended to picket W & LE and would ask prospective employees not to report for work. Further, the Unions stated that they would picket at the points of interchange of NS and W & LE, and would extend the picketing on NS' system depending on NS' response to the picketing, though any extension would "require further authorization by the rail labor organizations." NS intervened in this case and requested a preliminary injunction prohibiting the Unions from picketing at NS facilities or inducing NS employees not to perform their employment duties.[1] A preliminary injunction was issued May 23, 1990. On May 25, 1990, the district court denied the Unions' request for stay pending appeal, but it certified the record to this court for expedited review of the propriety of the preliminary injunction under Sec. 10 of the Norris-LaGuardia Act, 29 U.S.C. Sec. 110.
 
 II.
 
 8
 On appeal, the Unions challenge the jurisdiction of the district court to issue an injunction against picketing.[2] In general, the Norris-LaGuardia Act (29 U.S.C. Secs. 101 et seq.) removes jurisdiction from federal courts to enjoin peaceful strikes and picketing arising from a labor dispute. However, "the Norris-LaGuardia Act does not prevent a court from enjoining violations of a specific mandate of another labor statute." Burlington Northern R.R. v. BMWE, 481 U.S. 429, 444, 107 S.Ct. 1841, 1850, 95 L.Ed.2d 381 (1987). Therefore, the propriety of a particular injunction requires a two-step inquiry. First, does it involve a "labor dispute" within the meaning of Norris-LaGuardia? If so, does the injunction prohibit a "violation of a specific mandate of another labor statute"? If the answer to the second question is also yes, then the district court has jurisdiction to issue an injunction. However, the anti-injunction policy of Norris-LaGuardia is so strong that "[e]ven where a violation of a specific mandate is shown, '[c]ourts should hesitate to fix upon the injunctive remedy ... unless that remedy alone can effectively guard the plaintiff's right.' " Id. at 446, 107 S.Ct. at 1851, quoting IAM v. Street, 367 U.S. 740, 773, 81 S.Ct. 1784, 1802, 6 L.Ed.2d 1141 (1961).
 
 
 9
 There is no question that this case presents a "labor dispute" within the meaning of Norris-LaGuardia. The Act's definition of that term is broad:
 
 
 10
 The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.
 
 
 11
 29 U.S.C. Sec. 113(c).
 
 
 12
 Therefore, our inquiry devolves to whether a specific mandate of the RLA is violated by the Unions' planned picketing. The district court found that the picketing would violate RLA Sec. 2 Ninth (45 U.S.C. Sec. 152 Ninth). This section provides for the National Mediation Board to investigate all disputes among employees over who their representative should be. The Board may also hold an election if necessary. The district court found that this provision is the exclusive means[3] to resolve a "representation dispute," and that because the Unions could only force bargaining under the RLA if they were the recognized representatives of W & LE employees, the Unions could not picket to force bargaining.
 
 
 13
 The Unions counter that the objective of the picketing is not to obtain recognition as the representative of W & LE employees. Some or all of the Unions may eventually represent W & LE employees, but they do not now. The Unions state that the object of the enjoined picketing would be to pressure W & LE into hiring the NS employees with their seniority rights intact. However, because of the Unions' inability to enjoin the transfer of the line to W & LE in Railway Labor Executives' Ass'n v. Cheasapeake Western Ry., 738 F.Supp. 1544 (E.D.Va.1990), hiring for the W & LE has proceeded. If, in the future, one or more of the Unions are certified as the representative of the employees, they will have a duty to represent all employees fairly, and will not be able to favor the interest of former NS workers. Therefore, their inability to force bargaining before the NS-W & LE transaction has probably forever precluded the Unions from objecting to the manner W & LE initially hired its employees.
 
 
 14
 The railroads' key argument is that because W & LE now has employees, it cannot legally bargain with anyone other than the representative of its employees. Therefore, the Unions' current efforts to bargain must necessarily seek recognition as the employees' representative. Time has conspired in favor of the railroads on this issue. When NS requested the preliminary injunction, W & LE had not yet begun its operations and had no employees to which the RLA applied.[4] When the Unions failed to block the line transfer, W & LE began and is operating, and has filled some or most of the 330 nonmanagement positions available. The Unions' attempts to negotiate about the manner W & LE will hire employees have been mooted by actual hiring. Now that W & LE has a workforce, the Unions must represent those employees in order to bargain with W & LE.
 
 
 15
 We do not hold that the Unions could not have picketed W & LE's employment office or headquarters before W & LE became a "carrier". The RLA did not create the right to picket. Picketing is a form of speech protected by the First Amendment. American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855 (1941); Richmond, Fredericksburg & Potomac R.R. v. BMWE, 795 F.2d 1161, 1163 (4th Cir.1986), cert. denied, 481 U.S. 1036, 107 S.Ct. 1971, 95 L.Ed.2d 812 (1987). The Unions do not need to find a particular provision in the RLA to justify picketing. The affected railroad must find a specific mandate of the RLA that prohibits the picketing. As there can be no dispute over "representation" where there are no employees, the RLA's representation dispute resolution procedures could not have justified enjoining picketing before W & LE became an active railroad with a workforce.
 
 
 16
 In short, to the extent the Unions sought to force W & LE to hire employees in any particular manner, time has simply run out. W & LE is an operating carrier with employees, and the Unions cannot bargain over the working conditions of those employees until they represent them. Because a specific procedure for resolving representation disputes is mandated by the RLA, and we see no other remedy that "can effectively guard [NS'] right,"[5] the injunction granted by the district court was proper and is affirmed.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 W & LE has not requested such injunctive relief
 
 
 [2]
 The Unions also assert that NS lacked standing to seek the injunction at issue. This assertion gives us little pause. The threatened picketing and economic coercion of NS certainly provides NS a significant "stake in the outcome" of this dispute. NS unquestionably has core constitutional standing. See Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Nonetheless, the Unions also allege that NS lacks standing for prudential reasons--i.e., NS must assert the rights of W & LE and W & LE employees in order to demonstrate the illegality of the planned picketing. We decline to read a prudential rule of standing so blindly and rigidly as to leave a victim of secondary strikes or picketing utterly helpless. Prudential rules of standing help protect the separation of powers by keeping the courts out of the abstract, generalized grievances of citizens which are best resolved by the legislative branch. Id. The threatened injury to NS in this case was real and distinct. NS sought and received redress carefully tailored to protect its interest. There is no "prudential" reason to deny NS standing in this case
 
 
 [3]
 Given the RLA's purpose to prevent interruptions in commerce, this ruling is undoubtedly correct. "[A] holding that a union may ignore the section 2, Ninth procedure and resort instead to economic coercion would render the procedure 'meaningless.' " Summit Airlines, Inc. v. Teamsters Local, 628 F.2d 787, 795 (2d Cir.1980). See also Telegraphers v. Leighty, 298 F.2d 17 (4th Cir.), cert. denied, 369 U.S. 885, 82 S.Ct. 1160, 8 L.Ed.2d 287 (1962) (district courts lack jurisdiction to resolve representation dispute)
 
 
 [4]
 The NS/W & LE transfer took place on May 17. The preliminary injunction was issued May 23. As soon as W & LE took charge of the line, it became a "carrier" and its workforce "employees" under the RLA
 
 
 [5]
 Burlington Northern, 481 U.S. at 446, 107 S.Ct. at 1851