BEVERLY HILLS FOODLAND, INC.,
a Missouri corporation, Plaintiff–
Appellant,

v.

UNITED FOOD AND COMMERCIAL
WORKERS UNION, LOCAL 655,
Defendant–Appellee.

No. 94–1378.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 16, 1994.

Decided Oct. 27, 1994.

Terry A. Bond, St. Louis, MO, argued, for appellant.

Jerome Diekemper, St. Louis, MO, argued (Greg A. Campbell, on the brief), for appellee.

Before McMILLIAN, and MAGILL, Circuit Judges, and BOGUE,* Senior District Judge.

BOGUE, Senior District Judge.

Beverly Hills Foodland, Inc. (Foodland or appellant) appeals the District Court's [1] decision granting summary judgment in favor of the United Food & Commercial Workers Union, Local 655 (Union) on the appellant's claims of defamation and tortious interference. For the reasons stated herein we affirm the decision below, 840 F.Supp. 697 (E.D.Mo.1993).

## I. BACKGROUND

On or about April 23, 1989 appellant opened a retail grocery store, Beverly Hills Foodland Supermarket, in the City of Beverly Hills, St. Louis County, Missouri. Shortly thereafter, Foodland owners were contacted by representatives of the Union regarding unionizing the employees. The overtures were rejected and the Union began to conduct organizational activities on Foodland's premises. Foodland reacted negatively to the Union's activities and at one point called the police to have the Union organizers removed from its parking lot. Foodland's actions resulted in an unfair labor practice complaint being filed by the Union with the National Labor Relations Board. A settlement followed in which Foodland was required to post a notice in its store for sixty days stating that it would not interfere with the Union's organizational activities.

In July 1989, Union business representative Patrick McDonough (McDonough) notified Foodland by letter that the Union was terminating its organizational efforts. Not long after, the Union began a campaign publicly challenging Foodland policies, including its non-union status, wages paid to employees and the prices charged at Foodland. It appears the most contentious aspect of the Union's campaign focused on Foodland's treatment of its black employees.[2] Protests took the form of picketing, mass distribution of handbills and billboards calling for a consumer boycott of Foodland. The majority of Beverly Hills residents are black. Foodland closed approximately one year after the Union campaign was initiated.

Foodland initiated this action and in its second amended complaint alleged ten counts of state defamation and tortious interference based on the Union's picketing and boycotting activities. The action was removed to federal court based upon preemption by the National Labor Relations Act, 29 U.S.C. § 151 et. seq. (as amended) (hereinafter NLRA). Appellant's count I was a libel action based on a handbill distributed by the Union entitled "Are the Scales of Justice Balanced?" *See, infra,* note 4. Eight questions are posed in the handbill, including, "Is

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the Western Division of the District of South Dakota, sitting by designation.

1. Honorable Stephen Limbaugh, United States District Court Judge for the Eastern District of Missouri.

2. The Union claimed to have information indicating that Foodland's owners and managers were white, while its employees were predominately black; that the black work-force received wages and benefits lower than those paid by unionized stores; that most of its black employees were employed on less than full-time basis; and that its owners, managers, and many employees did not reside within Beverly Hills. Most of these factual allegations were essentially admitted by Foodland owners, though they adamantly denied engaging in any discriminatory conduct. 840 F.Supp. at 706.

Beverly Hills Foodland being discriminatory in their hiring practices in the community?" Count II was a tortious interference with the right to contract claim based on the same handbill described in Count I. Count III alleged slander based on statements made by McDonough to a representative of the Congress on Racial Equality characterizing Foodland owners as "racists." Count IV alleged libel based on picket signs stating Foodland was "unfair to black employees." Count V was a slander action alleging picketers under the Union's control told Foodland customers that store owners were racist.

Foodland's counts VI through X were based on the same factual circumstances as counts I through V, respectively, but added an allegation of actual malice on the part of the Union. The District Court dismissed the first five counts upon the Union's motion for summary judgment because it determined all actions occurred during a "labor dispute" and actual malice was required to be pled, and was not. 840 F.Supp. at 703. Of the second five counts (alleging actual malice), dismissal pursuant to the summary judgment motion was granted as to all but the counts in which store owners were characterized as racists (counts VIII and X). *Id.* at 704–07. The surviving counts were voluntarily dismissed and this appeal followed. The issues on appeal are whether the Union's conduct occurred during a labor dispute and, if so, whether the Union's conduct could give rise to state claims sounding in defamation or tortious interference.

## II. DISCUSSION

 We review the District Court's grant of summary judgment de novo, applying the same standards and affirming only when the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3] Fed.R.Civ.P. 56(c); *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 545 (8th Cir.1993) (citations omitted). All evidence is viewed in the light most favorable to the nonmoving party, Foodland, and they are given the benefit of all reasonable factual inferences. *Johnson*, 994 F.2d at 545.

### A. EXISTENCE OF A LABOR DISPUTE

 If the Union's activities complained of occurred within the context of a "labor dispute", Foodland's state tort claims are preempted by federal labor law. *Old Dominion Br. No. 496, Nat'l Ass'n Letter Car. v. Austin*, 418 U.S. 264, 271–73, 94 S.Ct. 2770, 2775, 41 L.Ed.2d 745 (1974) (citing, *Linn v. United Plant Guard Wkrs.*, 383 U.S. 53, 86 S.Ct. 657, 662, 15 L.Ed.2d 582 (1966)). *Linn* and *Austin* strike a compromise between state laws penalizing defamatory publication and federal labor policy protecting freedom of speech. As such, when the NLRA is implicated, i.e. during labor disputes, state defamation actions are partially preempted, with plaintiffs required to meet an actual malice standard similar to that announced in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (recovery permitted only if the defamatory publication was made with knowledge that it was false or with reckless disregard of whether it was false or not). *Austin*, 418 U.S. at 271–73, 94 S.Ct. at 2775.

"Labor dispute" is defined within the NLRA as "any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in proximate relation of employer and employee." 29 U.S.C. § 152(9). Foodland contends the letter from McDonough indicating the Union was ceasing organizational activities effectively ended any labor dispute. We do not agree that the McDonough letter is determinative on this issue. Courts have routinely

---

**3.** There exists some confusion regarding what ruling of the District Court is being appealed. Following its loss on the Union's summary judgment motion, Foodland moved the District Court to reconsider, which was denied. An appeal taken from the latter ruling would be reviewed under the clear abuse of discretion standard. *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413–14 (8th Cir.1988). We are satisfied Foodland is seeking review of the District Court's more substantial ruling, the initial grant of summary judgment in favor of the Union.

found that a labor dispute exists in situations which do not involve any organizing activities by a union. "A union picketing or boycotting a business which it has not tried to organize (and in some cases cannot organize) nevertheless involves a labor dispute." *Aarco v. Baynes*, 391 Mass. 560, 462 N.E.2d 1107, 1110 n. 3 (1984); see also, *Railway Labor Executives Ass'n v. Wheeling & Lake Erie Ry.*, 914 F.2d 53 (4th Cir.1990) (application of identical "labor dispute" definition under Norris–LaGuardia Act to union picketing railroad in attempt to force hiring of displaced non-union and union workers of another railroad).

■■■ The definition of labor dispute under the NLRA is very broad and "rarely have courts found concerted union activities to fall outside this broad definition." *Hasbrouck v. Sheet Metal Workers Local 232*, 586 F.2d 691, 694 n. 3 (9th Cir.1978) (citing *Mountain Navigation Co. v. Seafarers'*, 348 F.Supp. 1298, 1302–03 (D.Wis.1971)). Where the union acts for some arguably job-related reason and not out of pure social or political concerns, a "labor dispute" exists. *Hasbrouck*, 586 F.2d at 694 n. 3. We are persuaded the Union campaign publicizing Foodland's non-union status, wages and benefits paid to employees and alleged racial disparities in its work-force involved "terms" and "conditions" of employment. As such, a labor dispute existed which partially preempted Foodland's state defamation and tortious interference claims. The District Court did not err in granting summary judgment as to appellant's counts not alleging actual malice as required under federal labor law.

## B. FOODLAND'S STATE LIBEL AND SLANDER CLAIMS

■■■ Even in the context of a labor dispute, malicious defamation enjoys no constitutional protection. *Linn v. United Plant Guard Workers*, 383 U.S. 53, 63, 86 S.Ct. 657, 663, 15 L.Ed.2d 582 (1965). State libel and slander actions may be maintained within the context of a labor dispute but only if the defamatory publication is shown by clear and convincing evidence to have been made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Old Dominion Br. No. 496, Nat'l Ass'n Letter Car. v. Austin*, 418 U.S. 264, 281, 94 S.Ct. 2770, 2779–80, 41 L.Ed.2d 745 (1974).

■■■ Two statements attributed to the Union are before this court on appeal. The first is question one in a handbill distributed by the Union inviting readers to ask themselves whether Foodland was discriminatory in its hiring practices.[4] The second is an allegation, deemed to be true for purposes of summary judgment, that picketers under the Union's control carried signs stating Foodland was "unfair to black employees."

■■■ As to the first statement, the District Court concluded summary judgment was proper because it is not a false "statement of fact", rather it invites readers to make his or her own inquiry and assess the facts for him or herself. 840 F.Supp. at 705. We agree. The presence of a false statement of fact is a *sine qua non* for the maintenance of state defamation action in the labor field. *Austin, supra*, 418 U.S. at 283–85, 94 S.Ct. at 2781. This inquiry must be made prior to applying the reckless or knowing falsity (malice) test to the statement. *Id.* While statements in the form of opinions or questions do not enjoy absolute protection as such, *see e.g., Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), to be actionable such statements must be "reasonably read as an *assertion* of a false *fact*". *Chapin v. Knight–Ridder, Inc.*, 993

---

4. Precisely, the handbill was entitled "Are the Scales of Justice Balanced?" and stated as follows:
 > It is the opinion of an alliance of Beverly Hills citizens that the employees of Beverly Hills Foodland are being treated unfairly at their jobs.
 > BEFORE YOU DO YOUR SHOPPING ASK YOURSELF. AND BEVERLY HILLS FOODLAND THESE QUESTIONS ...

1. Is Beverly Hills Foodland being discriminatory in their hiring practices in the community? ...

The questions are followed by the statement, "For answers to these questions call 381–1122." (Foodland's telephone number). At the bottom of the handbill is the statement "PLEASE DO NOT SHOP BEVERLY HILLS FOODLAND."

F.2d 1087 (4th Cir.1993) (emphasis in original); see also *Milkovich, supra,* 497 U.S. at 20–22, 110 S.Ct. at 2707 (statement of opinion actionable only if it reasonably implies false and defamatory facts). Because the statement contained in the handbill was not a false statement of fact, nor could it reasonably be read as such, the statement must necessarily be characterized as nondefamatory in the context of the existing labor dispute. The District Court's grant of summary judgment in favor of the Union as to this count was proper.[5]

■ Similar principles apply to the second statement regarding the picket signs proclaiming Foodland to be "unfair" to its black employees. The Supreme Court has stated that "to use loose language or undefined slogans that are part of the conventional give and take in our economic and political controversies-like 'unfair' and 'fascist'—is not to falsify facts." *Austin, supra,* 418 U.S. at 284, 94 S.Ct. at 2781; citing *Cafeteria Employees Local 302 v. Angelos,* 320 U.S. 293, 295, 64 S.Ct. 126, 127, 88 L.Ed. 58 (1943). "Unfair" is a term requiring a subjective determination and is therefore incapable of factual proof. As such, the statement is not actionable and the District Court did not err in granting summary judgment.[6] See *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 774–76, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986) (Constitution requires that plaintiffs bear the burden of showing falsity of a statement before recovering in defamation action); *Milkovich,* 497 U.S. at 23, 110 S.Ct. at 2708 ("only defamatory statements that are capable of being proved false are subject to liability under state libel law") (Brennen, J., concurring); *Janklow v. Newsweek, Inc.,*

788 F.2d 1300, 1303 (8th Cir.1986) ("If a statement cannot plausibly be verified, it cannot be seen as 'fact' ").

## C. FOODLAND'S TORTIOUS INTERFERENCE CLAIMS

Foodland's counts II and VII (without alleging actual malice and with malice, respectively) alleged the statements in the "Scales of Justice" handbill tortiously interfered with its right to contract with its customers (i.e. Union's actions allegedly caused Foodland to lose business due to the decrease in consumer shopping). The District Court viewed the Union's activity in this regard as constitutionally protected and granted the Union's summary judgment motion dismissing these counts. 840 F.Supp. at 706. We agree.

■ At the outset we note the malice standard required for actionable defamation claims during labor disputes must equally be met for a tortious interference claim based on the same conduct or statements.[7] This is only logical as a plaintiff may not avoid the protection afforded by the Constitution and federal labor law merely by the use of creative pleading. Here Foodland has alleged the distribution of the Union handbill tortiously interfered with its business relations with customers. Because the statements within the handbill are afforded protection under federal labor law, the conduct of distributing the handbills must be afforded the same protection. Because count II did not allege actual malice on the part of the Union, this count was properly dismissed by the District Court.[8]

---

5. As further support for its dismissal, the District Court went on to conclude that Foodland presented no evidence the statements were made with malice, and noted that evidence was available to indicate the "genesis of [the] questions was grounded in truthful fact." 840 F.Supp. at 705. Because the statements themselves are nondefamatory, we need not decide whether they were made with knowledge of their falsity or with reckless disregard for their truth.

6. Again, because the statements themselves are nondefamatory, we do not reach the question of whether Foodland could satisfy the actual malice test.

7. In circumstances not involving labor disputes, a valid claim for tortious interference under Missouri law requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316 (Mo.1993).

8. This is not to say that a plaintiff must make out a *successful* defamation action to maintain a claim of tortious interference. There may be instances in which a defamation claim, properly pled, may fail and yet a tortious interference claim may succeed. We are merely saying that

As to count VII (alleging malice), the District Court was correct in determining the Union's conduct was constitutionally protected. The Supreme Court has recognized that the activity of peaceful pamphleteering is a form of communication protected by the First Amendment. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971) (citations omitted). The protection afforded under the First Amendment is not diminished where the communications are intended to exercise a coercive impact. *Id.* Additionally, the prime directive in the Union campaign, a boycott of Foodland, is similarly constitutionally safeguarded. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (holding that a state tortious interference claim by targeted businesses could not be maintained against participants and organizers of a consumer boycott).

As a parting shot, Foodland in its reply brief states that the Union's picketing and pamphletting activities were an unfair labor practice under Section 8(b)(7)(C) of the NLRA, 29 U.S.C. § 8(b)(7)(C), and therefore urge this Court to strip the Union activities of their constitutional protection. Specifically, Foodland argues that because the Union's picketing was recognitional as opposed to informational (alleged to be an unfair labor practice under the present facts), the Union "cannot stand behind the First Amendment to the U.S. Constitution" as a defense and assert that Foodland cannot meet all required elements of a tortious interference claim.[9] Appellant's Reply Brief at 13.

This argument must fail. First, Foodland's argument would require us to find that an unfair labor practice was in fact committed by the Union. No such claim was raised in Foodland's complaint and the District Court was not faced with the issue. As such, whether or not an unfair labor practice was committed is beyond the scope of our review.

Additionally, the constitutional protection afforded the Union's activities in this case are not in place to enable the Union to raise a defense to Foodland's claim of tortious interference. Rather, the Constitution serves to prohibit the claim from being brought at all. Allowing a tortious interference cause of action to proceed against the Union for its conduct in this case would amount to an impermissible restraint on the Union's First and Fourteenth Amendment rights. *NAACP v. Claiborne Hardware Co., supra*, 458 U.S. at 916 n. 51, 102 S.Ct. at 3427 n. 51. This claim was properly dismissed by the District Court.

## CONCLUSION

For the reasons stated above, we affirm the District Court in all respects.

---

when, within the context of a labor dispute, the defamation and tortious interference actions are based on the same statements, the protection afforded the former (requirement that plaintiffs prove malice) must similarly apply to the latter.

9. In addition to raising the constitutional issues, the Union has defended the tortious interference claim by maintaining Foodland cannot satisfy one of the required elements to be proved: absence of justification on the Union's part. *See*, supra, note 7.