# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SCOTT D. COUSINS | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) C.A. No. S20C-11-036 CAK | |
| | ) | |
| ROSEMARY GOODIER, and | ) | |
| JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: June 24, 2021
Decided: July 30, 2021

***Defendant Rosemary Goodier's Motion to Dismiss for Failure to State a Claim under Delaware Superior Court Civil Rule 12(b)(6)***

## MEMORANDUM OPINION AND ORDER

Rodney A. Smolla, Esquire, 4601 Concord Pike, Wilmington, DE 19803, Attorney for Defendant Rosemary Goodier.

Douglas D. Herrmann, Esquire, Troutman Pepper Hamilton Saunders LLP, 1313 Market Street, Suite 5100, Wilmington, DE 19899-1709, Attorney for Defendant Rosemary Goodier.

Stephen J. Neuberger, Esquire, and Thomas S. Neuberger, Esquire, The Neuberger Firm, P.A., 17 Harlech Drive, P.O. Box 4481, Wilmington, Delaware 19807, Attorneys for Plaintiff.

**KARSNITZ, J.**

## INTRODUCTION

At the end of the day, the question presented in this case is this: in the tort context, do certain statements made by Defendant Rosemary S. Goodier ("Defendant" or "Goodier")[1] about a lawsuit filed by Plaintiff Scott D. Cousins ("Plaintiff" or "Cousins") contain implied facts which may be considered by a jury if I allowed this to go to trial, or as a matter of law are they unactionable expressions of Defendant's opinion? If the former, then I may not grant Defendant's Motion to Dismiss the Complaint under Delaware Superior Court Civil Rule 12(b)(6). If the latter, then I may. To put it another way, viewing the Complaint in the light most favorable to Plaintiff (and I do), has he pled facts which would entitle him to recover on his claims under any reasonably conceivable set of circumstances susceptible of proof? If so, then I may not grant Defendant's Motion to Dismiss the Complaint under Delaware Superior Court Civil Rule 12(b)(6). If not, then I may.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a member of the Delaware Bar who resides in Kennett Square, Pennsylvania and was employed by Bayard, P.A., a law firm in Wilmington,

---

[1] In his Complaint, Plaintiff argues that, although the identities and residence of Defendants John Does 1-10 are unknown at this time, I have personal jurisdiction over each of Defendants Goodier and Defendants John Does 1-10 under a conspiracy theory of personal jurisdiction. Plaintiff asserts that he will ascertain the identities and residence of Defendants John Does 1-10 in initial discovery and amend the Complaint to allege such specific information. I do not address that issue in this Opinion, as it is unnecessary to the disposition of this case. Nor do I refer to Defendants John Does 1-10 in this Opinion, but only to Defendant Goodier.

Delaware ("Bayard"). Defendant is also a member of the Delaware Bar who resides in Chadds Ford, Pennsylvania.

On August 5, 2020, Plaintiff filed a *pro se* lawsuit against the Unionville Chadds Ford School District in the Court of Common Pleas in West Chester, Pennsylvania with respect to its use of the letter "U" with a feather as the Unionville High School mascot. Later that day, Defendant sent an email to Bayard which was critical of Plaintiff's lawsuit. Within the next 24 hours, Bayard requested Plaintiff's resignation. Following his eventual resignation from Bayard, Plaintiff inquired or applied to several law firms and in-house counsel law departments, without success. Ultimately Plaintiff formed his own law firm.

Plaintiff filed his Complaint in this case on November 30, 2020. The Complaint contains four counts against Defendant: tortious interference with contract, defamation, aiding and abetting, and civil conspiracy. However, in his papers filed in response to Defendant's Motion to Dismiss the Complaint under Delaware Superior Court Rule 12(b)(6), Plaintiff addressed only the first two counts: tortious interference and defamation. That matters not, however, because all four counts rest on a single predicate act of Defendant: the email she sent on August 5, 2020 to Bayard. The Complaint cites two sentences containing three phrases from that email, claiming that they communicate actionable false statements of fact:

- We hope you can reflect upon how *shockingly racist* and tone deaf this suit is, particularly in light of the present demands against the school board, who

2

has to deal with getting students back to school safely in the midst of a deadly pandemic. [Emphasis supplied]

- Our tax dollars and administrative resources will be plunged into countering some *shockingly racist statements* by Mr. Cousins about *protecting his white, Christian heritage*. [Emphasis supplied]

Defendant has filed a Motion to Dismiss the Complaint under Delaware Superior Court Civil Rule 12(b)(6), and the parties have briefed and orally argued the Motion. This is my decision on the Motion.

## PRELIMINARY COMMENTS

This case, like several others which have recently come before me, requires me to examine the interplay between tort law and constitutional free speech issues. Plaintiff filed a lawsuit which he believed promoted his principles. Defendant reacted quite strongly because she believed this lawsuit was "shockingly racist." I have no doubt that each party is sincere in the opinion each asserts. Sincerity is an asset, but civility is as well.

Defendant's comments regarding Plaintiff's lawsuit are her opinions. To borrow a phrase now in common parlance – spoiler alert – as opinions Defendant's comments are protected by constitutional privilege.

Two other preliminary comments. First, Plaintiff argues articulately that because Defendant's comments were made in a private email to his employer, Bayard, the comments receive less or no constitutional protection. I reject that contention. For me, a statement made in a private email carries the same

3

constitutional protections as one stated through a megaphone on Rodney Square.

My second preliminary comment responds to Plaintiff's argument that no one could consider Plaintiff's lawsuit "shockingly racist," as Defendant wrote. This contention is factually wrong – we know at least one person was of the opinion that the lawsuit was shockingly racist. The underlying suggestion Plaintiff makes is that I apply an objective standard to evaluate Defendant's statement. Here lies the underlying and unyielding principle. For me, courts cannot, and should not, evaluate the objective validity of an opinion. To do so violates First Amendment standards.

As I will describe later in this opinion, simply labelling a statement as an opinion does not end the discussion. If the opinion suggests or implies facts, I must examine the implied facts to determine if they conceivably make a case for defamation. For me, in this case they do not.

## ANALYSIS

## DEFAMATION

### Standard of Review

The Delaware Supreme Court has addressed the Rule 12(b)(6) standard of review in the defamation context several times,[2] most recently finding:

---

[2] See *Ramunno v. Cawley*, 705 A.2d 1029, 1034-38 (Del. 1998) (stating that the Superior Court failed to give proper inferences and improperly substituted its own views for that of the fact-finder, and reversing because the Superior Court "strayed from the time-honored rules governing motions to dismiss under Rule 12(b)(6) by failing to draw every reasonable factual inference in favor of the complainant."); *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (stating the standard and citing *Ramunno*); *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978) (reversing a ruling that grossly

4

[T]he threshold for the showing a plaintiff must make to survive a motion to dismiss is low. Delaware is a notice pleading jurisdiction. Thus, for a complaint to survive a motion to dismiss, it need only give general notice of the claim asserted.[3]

The Court must "view the complaint in the light most favorable to the nonmoving party, accepting as true [his] well-pled allegations and drawing all reasonable inferences that logically flow from those allegations."[4] The motion can be granted only when the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[5] In *Doe*, the Court explained that review of the *Ramunno* decision demonstrates that this is a relatively low bar because it:

> … illustrate[s] that even silly or trivial libel claims can easily survive a motion to dismiss where the plaintiff pleads facts that put the defendant on notice of his claim, however vague or lacking in detail these allegations may be.[6]

### Elements of Defamation

Under Delaware law, at trial Plaintiff would have to prove that: 1) Defendant made a defamatory statement; 2) concerning Plaintiff; 3) the statement was published; and 4) a third party would understand the character of the communication

---

insensitive remarks about a police chief are not actionable and stating the "test for sufficiency is a broad one" on a Rule 12(b)(6) motion).

[3] *Doe*, 884 A.2d at 458 (internal punctuation and footnote omitted).

[4] *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 871 (Del. 2020).

[5] *Id*. at 871–72.

[6] *Doe,* 884 A.2d at 459.

as defamatory.[7]  The first element is perhaps the most important. Whether or not a statement is defamatory is a question of law.[8] In answering this question, I must decide "whether alleged defamatory statements are expressions of fact or protected expressions of opinion."[9]  Because this question is one of law, I can make this determination under the standard of review for a motion to dismiss, discussed above. I have before me the allegedly defamatory statements and I can determine whether they are defamatory based on the words and the context in which they were published. I turn now to the first element: whether Defendants statements were defamatory.  If they were not, then I need not consider the other elements of defamation.

### Rhetorical Hyperbole and Name Calling

Tort liability does not attach to hyperbole and name calling at common law and under First Amendment principles.  Insult and critique are different from palpable false statements of fact.  Plaintiff bears the burden of establishing that Defendant published a false statement of fact concerning him.[10]  Even using

---

[7] *Doe*, 884 A.2d at 463.

[8] *Riley v. Moyed,* 529 A.2d 248, 251 (Del.1987).

[9] *Id.*

[10] *Philadelphia Newspapers, Inc., v. Hepps*, 475 U.S. 767, 778 (1986); *Milkovich,* 497 U.S. at 16-17 (1990); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (First Amendment precluded recovery for emotional distress over ad parody which "could not reasonably have been interpreted as stating actual facts about the public figure involved"); *Letter Carriers v. Austin*, 418 U.S. 264, 284-86, (1974) (use of "traitor" in literary definition of union "scab" not basis for defamation action under federal labor law since used "in a loose, figurative sense" and was "merely rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by union members").

language that might in some contexts be deemed factual is insulated from liability when in the specific context in which it is published, it is plain that it is being used figuratively to express an opinion.[11]  Plaintiff's Complaint must be dismissed if the "allegedly defamatory statements cannot be interpreted as stating actual facts, but instead are either 'subjective speculation' or 'merely rhetorical hyperbole.'"[12]

In my view, Defendant's three statements about Plaintiff's lawsuit are not actionable under this test.  A specific accusation that a person engaged in palpable race discrimination may be actionable defamation because jurors can objectively determine the motive for the discrimination.  In contrast, political, cultural, and ideological critiques that accuse institutions or individuals of being racist or bigoted are not actionable but are expressions of name calling and rhetorical hyperbole protected at common law and under the First Amendment.[13] Courts have consistently held that imputations of racism and all sorts of other negative qualities are inherently subjective and not actionable.[14]

---

[11] *Greenbelt Co-op. Pub. Association v. Bresler*, 398 U.S. 6, 13 (1970) (accusations of "blackmail" protected under First Amendment).

[12] *Doe,* 884 A.2d at 466 (Del. 2005); *Beverly Enterprises, Inc. v. Trump*, 182 F.3d 183, 187 (3d Cir. 1999) ("Although Trump's statements were undoubtedly offensive and distasteful, the law of defamation does not extend to mere insult.").

[13] *McCafferty v. Newsweek Media Group, Ltd.*, 955 F.3d 352, 358 (3d Cir. 2020) (while specific accusations of race discrimination may be actionable, "a simple accusation of racism" is not).

[14] *Agar v. Judy*, 151 A.3d 456, at 481 (Del. Ch. 2017); *Stevens v. Tillman*, 855 F.2d 394 (1988), *cert. denied*, 489 U.S. 1065 (1989) ("racist"); *Buckley v. Littell*, 539 F.2d 882 (2d Cir.1976), *cert. denied*, 429 U.S. 1062 (1977) ("fascist," "fellow traveler," and "radical right"); *Rutherford v. Dougherty*, 91 F.2d 707 (3d Cir.1937) (religious hatred and bigotry); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1277 (M.D. Ala. 2019) ("hate group"); *Sall v. Barber*, 782 P.2d 1216, 1218–19 (Colo.Ct.App.1989) ("bigot"); *Rambo v. Cohen*, 587 N.E.2d 140, 147 (Ind.Ct.App.1992) ("anti-Semite"); *Raible v. Newsweek, Inc.*, 341 F. Supp. 804, 806–07

Taking Defendant's statements about Plaintiff's lawsuit in context—both the immediate context and the broader social context—it becomes apparent that the "allegedly defamatory statements cannot be interpreted as stating actual facts, but instead are either 'subjective speculation' or 'merely rhetorical hyperbole.'"[15]

## Fact vs. Opinion

In *Riley v. Moyed*,[16] the Delaware Supreme Court embraced an influential four-part test articulated by United States Circuit Court of Appeals for the District of Columbia to distinguish between actionable false statements of fact and non-actionable opinion.[17] "First, the Court should analyze the common usage or meaning of the challenged language. Second, the Court should determine whether the statement can be objectively verified as true or false. Third, the Court should consider the full context of the statement. Fourth, the Court should consider the broader social context into which the statement fits."[18] The four *Riley/Ollman* factors apply collectively and in their totality, and often overlap and interrelate.

## Common Usage

In my view, the common usage of phrases such as "shockingly racist" and "protecting his white, Christian heritage" as applied to Plaintiff's lawsuit clearly point

---

(W.D.Pa.1972) ("white majority"); *Rybas v. Wapner*, 311 Pa. Super. 50 (1983) ("anti-Semitic"); *Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 766 (D.N.J. 1981) (racial prejudice); *Sweeney v. Philadelphia Record Co.*, 126 F.2d 53, 55 (3d Cir. 1942) (bigotry).

[15] *Doe,* 884 A.2d at 466.

[16] 529 A.2d 248 (Del. 1987).

[17] See *Ollman v. Evans*, 750 F.2d 970, 979 (D.C. Cir. 1984).

[18] *Riley*, 529 A.2d at 252 (internal citations omitted).

toward critique and opinion, and not factual assertions. "An alleged defamatory statement is generally not provable as false when it uses a term that has an imprecise and debatable meaning."[19]

In *Buckley*, the Second Circuit held that characterizing William F. Buckley, Jr. as a "fellow traveler" of "fascism" or the "radical right" used terms which were "concepts whose content is so debatable, loose, and varying, that they are insusceptible to proof of truth or falsity." The Court noted that those ambiguous labels contrasted sharply with accusations of actually being a member or legislative representative of a concrete political party, which are allegations that are "susceptible to proof or disproof of falsity." In contrast, what was or was not "fascism" was subject to argument, the sort of imprecise meaning and usage common "in the realm of political debate."

In *Coral Ridge*, the Court quoted *Buckley* and applied its principles in holding that accusations that defendant was a member of a "hate group" were not actionable. "Similar to the terms 'fascism,' 'radical right,' and 'political Marxist,' the term 'hate group' also suffers from a 'tremendous imprecision of the meaning and usage ... in the realm of political debate.'"

### Objective Verifiability

For me to send this case to a jury, I must find that the jury can determine the

---

[19] *Buckley v. Littell*, 539 F.2d at 890, 893-894 (term "fascist" not actionable); *Coral Ridge Ministries Media, Inc.,* 406 F. Supp. 3d at 1276 ( term "hate group" not actionable).

truth or falsity of Defendant's statements in some objectively verifiable manner. I cannot imagine what types of questions I could put to the jury in my jury instructions in this regard. If I allowed the jury to review the underlying West Chester, Pennsylvania lawsuit and asked the jurors to determine as a matter of fact whether it is "shockingly racist," I think it is highly debatable whether that fact would be verifiable on the face of the lawsuit. Nor do I think that the statement "shockingly racist" implies the existence of an independent, undisclosed defamatory factual basis for Defendant's opinion about the lawsuit under *Kanaga* and *Ramunno*.[20] Even if the statements were verifiable, they are supported by premises in Plaintiff's lawsuit that cannot be held to be false as a matter of fact. I have great faith in, and respect for, jurors. I believe they would understand that Defendant's opinion represents her interpretation of the lawsuit, and that they are free to draw their own conclusions about the lawsuit. They would not, however, be determining a matter of fact. Moreover, how would I review such a determination by the jury?

*Ollman* held as "obviously unverifiable" the alleged defamatory statement that the plaintiff academic was an "outspoken proponent of political Marxism." The *Ollman* court held that this characterization was "much akin to" the "fascist" label in *Buckley*, in that it was a "loosely definable, variously interpretable

---

[20] Defendant never ascribed the words "shockingly racist" to Plaintiff himself, but only to the lawsuit.

statement" made in the context of "political, social or philosophical debate."

## Full Context of the Statement

Defendant's allegedly defamatory statements were contained in an email sent to Bayard to "bring to the firm's attention the lawsuit filed by one of your directors, Scott Cousins, against the Unionville Chadds Ford School District" and it contained a link to a news story about the lawsuit. "When an opinion is accompanied by its underlying non-defamatory factual basis, a defamation action premised upon that opinion will fail no matter how unjustified, unreasonable or derogatory the opinion might be."[21]. The email concerned the lawsuit, not Plaintiff, and members of Bayard could read the lawsuit for themselves and draw their own conclusions. Defendant's statements were not made in isolation but were imbedded in other statements about the protection of students from COVID-19, the waste of tax dollars in defending the lawsuit, and the fact that Plaintiff's child had graduated from Unionville. In my view, any reasonable reader of the email would believe that Defendant is plainly expressing her opinion that the lawsuit was a waste of public resources and her concurrent opinion that the lawsuit contains offensive statements. I find it interesting that Defendant also calls the lawsuit "horrific," yet Plaintiff does not characterize that statement as defamatory. To me, "horrific" and "racist" are both subjective terms of opinion.

The third factor under the *Riley/Ollman* test is an inquiry into context. T h e

---

[21] *Riley*, 529 A.2d at 254.

only conduct of Plaintiff that Defendant criticized was the filing of the lawsuit, thus providing readers of the email with the plain contextual understanding that her characterizations were her opinions concerning that lawsuit.

## Broader Social Context

The broader social context in which Defendant's statements were made is the national discourse on race in America, symbols which suggest racial or ethnic stereotypes, and the names and mascots of sports teams. Charges of "racism" are often made during this discourse, and heated rhetoric and name calling are common.

Both in its pleadings and at oral argument, Plaintiff stated that Defendant relies on an overbroad interpretation of *Riley*, which interpretation -- if not *Riley* itself – was overruled by the United States Supreme Court three years later in *Milkovich v. Lorain Journal Co*.[22] In *Milkovich,* the Supreme Court rejected a constitutionally required "opinion" exception to State defamation laws.[23] It held that, in addition to existing constitutional protections, no additional separate constitutional privilege for "opinion" is required to ensure the freedom of speech guaranteed by the First Amendment.[24] I need not address whether Defendant made arguments to the contrary, because I believe that *Riley* and *Milkovich* are compatible. Moreover, I believe that Riley is compatible with two subsequent opinions of the

---

[22] 497 U.S. 1 (1990).

[23] The Supreme Court clarified any dictum to the contrary in *Gertz v. Robert Welch, Inc.*, 418 US. 323 (1974).

[24] 497 U.S. at 21.

Delaware Supreme Court which recognized *Milkovich*.[25]

A good example of a lower court grappling with the *Milkovich* opinion is *Moldea, supra*.[26] The United States District Court for the District of Columbia granted summary judgment in favor of a newspaper publisher in an action brought by the author of a book arising from the publication of a book review which contained an allegedly defamatory statement that the book contained "too much sloppy journalism." On appeal, the United Stated Circuit Court for the District of Columbia originally reversed and remanded, holding that the allegedly defamatory statement was a factually verifiable statement under *Milkovich*.[27] On petition of rehearing, however, the Circuit Court modified its earlier opinion and affirmed the District Court's summary judgment. It found that it was highly debatable whether the allegedly defamatory statement was sufficiently verifiable to be actionable in defamation:

> Arguably, our decision … failed adequately to heed the counsel of both the Supreme Court and our own precedents that "[w]here the question of truth or falsity is a close one, a court should err on the side of nonactionability." *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287, 1292 (D.C. Cir.) (citing *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776, 106 S. Ct. 1558, 1564,

---

[25] *Kanaga v. Gannett Co., Inc.*, 687 A.2d 173, 178 (stating that *Riley* allows liability for "implied assertions of fact"); *id.* at 179 ("a statement of opinion would be actionable if it implies the allegation of undisclosed defamatory facts as the basis for the opinion"); *Ramunno,* 705 A.2d at 1036 ("a defamation action may lie where an opinion implies the existence of an undisclosed defamatory factual basis"); *id.* at 1038 n.34 ("Again, in light of our holding in *Kanaga* that a statement cast as an opinion is actionable if it implies the existence of undisclosed defamatory facts, we caution against an overly rigid application of the four-part *Riley* test").

[26] 22 F.3d 310 (D.C. Cir. 1994).

[27] 15 F.3d 1137.

89 L.Ed.2d 783 (1986)), *cert. denied,* 486 U.S. 825, 109 S. Ct. 75, 102 L.Ed.2d 51 (1988). "The First Amendment requires that we protect some falsehood in order to protect speech that matters." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 341, 94 S. Ct. 2997, 3007, 41 L.Ed.2d 789 (1974). The Court has cautioned in several cases that the First Amendment preserves a "breathing space" essential to the exercise of freedom of the press. "To that end [the Supreme] Court has extended a measure of strategic protection to defamatory falsehood." *Id.* at 342, 94 S. Ct. at 3008.

However, the Circuit Court did not need to determine whether the allegedly defamatory statement was verifiable, because the statement was a supportable interpretation of the underlying book. Thus, even if the statement was verifiable, it was supported by premises in the book that the Circuit Court could not hold to be false as a matter of fact: "Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation."[28]

Moreover, "[w]hen an opinion is accompanied by its underlying nondefamatory factual basis, a defamation action premised upon that opinion will fail no matter how unjustified, unreasonable, or derogatory the opinion might be."[29] Defendant made it clear that she was critiquing Plaintiff's lawsuit, which had been the subject of media coverage and had been reviewed by members of Bayard. Because Defendant fully disclosed the underlying nondefamatory factual

---

[28] 15 F.3d at 1144-45.

[29] *Riley*, 529 A.2d at 254.

basis for her email as Plaintiff's lawsuit, "readers can interpret the factual statements and decide for themselves whether the writer's opinion was justified."[30]

I find that Defendant's statements are statements of opinion rather than fact, and that, as a matter of law, they are not actionable as defamatory. Thus, I need not address the other elements of the tort of defamation.

## CONCLUSION

For the reasons stated above, I **GRANT** Defendant's Motion to Dismiss Plaintiff's Defamation Claim for Failure to State a Claim under Delaware Superior Court Civil Rule 12(b)(6).

## TORTIOUS INTERFERENCE WITH CONTRACT, CIVIL CONSPIRACY AND AIDING AND ABETTING

Plaintiff's three additional tort claims all rest on the very same allegedly defamatory statements made by Defendant which are the subject of Plaintiff's defamation claim. If those statements are not actionable as defamation, they are not actionable as tortious interference with contract, conspiracy, or aiding and abetting. The same First Amendment protections that insulate Defendant from liability for defamation insulate her from liability for tortious interference with contract. In *NAACP v. Claiborne Hardware Co.*,[31] the United States Supreme Court held that the First Amendment barred tortious interference claims and protected the right of

---

[30] *Id.* at 254; *Kanaga,* 687 A.2d at 178.
[31] 458 U.S. 886, 916-17 (1982).

individuals to engage in public protest for the purpose of influencing societal or governmental change, even if that protest activity causes economic harm.[32]

The tortious interference with contract claim additionally fails because Plaintiff does not allege in the Complaint that Defendant's sole motivation in making the statements was to interfere with his contact with Bayard. Defendant's email calls for no action by Bayard against Plaintiff and does not demand his dismissal or discipline. Indeed, the Complaint states that Defendant's motivation was at least in part political, as Plaintiff's "cancel culture" references bely. Under Delaware law, however, "[o]nly if the defendant's *sole* motive was to interfere with the contract will this factor support a finding of improper interference."[33]

Plaintiff may not through the artifice of clever pleading avoid the strictures of defamation law that would otherwise apply. In *Hoover v. Van Stone,*[34] the Delaware Federal District Court, applying Delaware law, held that a counterclaim for defamation was barred under the Delaware "judicial proceedings" absolute privilege. The issue before the court was whether the judicial proceedings privilege, originally developed in defamation law, should also be applied to, *inter alia*, claims for tortious interference with contractual relationships. The court held that the privilege should also apply to tortious interference with contractual relationships,

---

[32] *See also City of Keene v. Cleaveland*, 167 N.H. 731, 740 (2015) (tortious interference claim against protestors barred under First Amendment principles established in *Claiborne*).
[33] *WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) (emphasis in original).
[34] 540 F. Supp. 1118 (D. Del. 1982).

less the policies underlying the privilege be defeated by mere artful pleading:

> Defendants argue that even if the absolute privilege bars an action for defamation, it does not preclude the prosecution of the three other counts contained in the counterclaim. These counts, however, are all predicated on the very same acts providing the basis for the defamation claim. Application of the absolute privilege solely to the defamation count, accordingly, would be an empty gesture indeed, if, because of artful pleading, the plaintiff could still be forced to defend itself against the same conduct regarded as defamatory.[35]

*Hoover* was endorsed and relied upon with approval by the Delaware Supreme court in *Barker v. Huang*.[36] In *Barker* the Delaware Supreme Court held that the Superior Court erred in not applying the absolute privilege applicable in defamation actions to the other causes of action that had been pleaded as well:

> However denominated, Barker's claim is that Huang intentionally made derogatorily false statements about her, and that she has been harmed thereby. To the extent that such statements were made in the course of judicial proceedings, they are privileged, regardless of the tort theory by which the plaintiff seeks to impose liability. We therefore hold that Barker's claims of invasion of privacy and intentional infliction of emotional distress, to the extent that they complain about statements made by Huang during the course of the Rochen litigation, are barred by the absolute privilege.[37]

While *Hoover* and *Barker* concern common law immunity, their principle should certainly apply with equal if not greater force to constitutional immunity under the First Amendment. Numerous courts have held that tortious interference claims grounded in the exercise of free expression on matters of public concern are

---

[35] *Id.* at 1124.
[36] 610 A. 2d 1341 (Del. 1992).
[37] *Id*. at 1349.

barred by the First Amendment.[38]

I find that Plaintiff's claims for tortious interference with contract, civil conspiracy and aiding and abetting are derivative of his defamation claim, and as such are, like the defamation claim, non-actionable as a matter of law. Because I find Plaintiff's three additional tort claims non-actionable, I need not address the various elements of tortious interference with contract under Delaware common law and §766 of the Restatement (Second) of Torts (1979) as discussed in Plaintiff's pleadings.

---

[38] *Resolute Forest Products, Inc. v. Greenpeace International*, 302 F. Supp. 3d 1005, 1016 (N.D. Cal. 2017) ("Therefore, claims which are similar to defamation, such as tortious interference with contractual or prospective relationships 'are subject to the same first amendment requirements that govern actions for defamation.'"), *quoting Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990); *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (applying *Unelko's* holding to actions for intentional interference with economic relationships and for prospective economic advantage); *Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 821 (9th Cir. 2002) (Tortious interference causes of action are subject to First Amendment requirements); *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 973 (3d Cir.1985) (unless defendants "can be found liable for defamation, the intentional interference with contractual relations count is not actionable"); *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir.1994) (Constitutional requirements for defamation "must equally be met for a tortious interference claim based on the same conduct or statements"; otherwise "a plaintiff may ... avoid the protection afforded by the Constitution ... merely by the use of creative pleading"); *State of South Dakota v. Kansas City Southern Industries*, 880 F.2d 40, 50–51 (8th Cir.1989) (applying First Amendment to tortious interference); *Eddy's Toyota of Wichita, Inc. v. Kmart Corp.*, 945 F. Supp. 220, 224 (D. Kan. 1996) ("[T]he court agrees with defendant that the letters in this circumstance are protected free speech and cannot form a basis for plaintiff's tortious interference claim," applying *Claiborne*); *National Organization for Women, Inc. v. Scheidler*, No. 86 C 7888, 1997 WL 610782, at *31 (N.D. Ill. Sept. 23, 1997) ("The court therefore concludes that the application of the state law of tortious interference with contractual relations to Migliorino's conduct in this case would violate the First Amendment."); *City of Keene v. Cleaveland*, 167 N.H. 731, 740 (2015) (tortious interference claim barred under First Amendment principles established in *Claiborne*); *Cincinnati Arts Assn. v. Jones*, 2002-Ohio-5428, 54, 120 Ohio Misc. 2d 26, 37, 777 N.E.2d 346, 355 (Rejecting tortious interference claim applying *Claiborne* and observing: "Even when contracts are interfered with by political speech, there is no right to recovery."); *Moldea,* 22 F.3d at 320 ("[P]laintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim.").

**CONCLUSION**

For the reasons stated above, I **GRANT** Defendant's Motion to Dismiss Plaintiff's Claims for Tortious Interference with Contract, Civil Conspiracy, and Aiding and Abetting for Failure to State a Claim under Delaware Superior Court Civil Rule 12(b)(6).

This case is dismissed.

**IT IS SO ORDERED.**

/s/ Craig A. Karsnitz

cc: Prothonotary